WILCHESTER WEST CONCERNED
HOMEOWNERS LDEF, INC.,
Appellant,

v.

WILCHESTER WEST FUND, INC.,
Wilchester Club, and Wilchester
Owners Committee, Appellees.

No. 01–03–00436–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 11, 2005.

David Alfred Kahne, Houston, for Appellant.

John Bradley Mitchell, Stephanie L. Quade, Roberts, Markel & Folger, L.L.P., Marc D. Markel, Clayton R. Hearn, Roberts, Markel & Guerry, P.C., Houston, for Appellees.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION ON MOTION FOR REHEARING

TERRY JENNINGS, Justice.

We grant appellant's motion for rehearing, withdraw our opinion dated June 17, 2004, and substitute this opinion in its place.

In this suit for declaratory relief, which concerns a dispute between a group of homeowners and the homeowners' associations of two neighboring subdivisions, ap-

pellant, Wilchester West Concerned Homeowners LDEF, Inc. (WWCH), challenges the trial court's rendition of summary judgment in favor of appellees, Wilchester West Fund, Inc., Wilchester Club, and Wilchester Owners Committee, on all of WWCH's claims.

WWCH is a non-profit organization of homeowners from the Wilchester West subdivision, which is located in Harris County. The Wilchester West Fund, Inc. (Wilchester West HOA) is the homeowners' association for the Wilchester West subdivision. The Wilchester Owners Committee (Wilchester HOA) is the homeowners' association for the neighboring Wilchester subdivision.[1] The Wilchester Club (the Club) is a separate, non-profit corporation that owns and maintains recreational swimming and tennis facilities at two locations adjacent to the two subdivisions.

In three issues, WWCH argues that the trial court erred in granting the joint motion for summary judgment filed by the Club and the homeowners' associations and in denying WWCH's motion for summary judgment because (1) in the absence of amendments to the homeowners' deed restrictions, the homeowners' associations did not have the authority to enter into a contract with the Club to obtain use privileges for all homeowners in exchange for an increase in the amount of the homeowners' annual assessments; (2) a petition circulated by the homeowners' associations seeking approval from a majority of the homeowners to amend the homeowners' deed restrictions was insufficient because it contained "material non-disclosures or misrepresentations"; and (3) as a matter of law, the homeowners' associations did

---

1. We refer to Wilchester West HOA and Wilchester HOA together as "the homeowners' associations."

not obtain authority to enter into a contract with the Club or to "force all homeowners to join" the Club.

We affirm.

### Factual and Procedural Background

In August 1999, the trustees of Wilchester HOA, Wilchester West HOA, and the Club formed the "Wilchester Club Resolution Committee" (the Resolution Committee) to study and to prepare recommendations concerning the financial future of the Club and its relationship with the subdivisions. At that time, membership in the Club was voluntary, and its members were required to pay an initiation fee and annual membership dues in exchange for the privilege of using the Club's facilities. The Resolution Committee subsequently prepared and circulated, to the homeowners of both subdivisions, a letter and a "White Paper" setting forth its conclusion that the Club was "not financially viable given its present membership base, the market clearing price of neighborhood club memberships in West Houston, normal pool and tennis facility operating costs, and the maintenance cost requirements for two facilities that are approximately 35 years old." The Resolution Committee recommended that, to preserve the viability of the Club and to provide funds needed to improve and to maintain its facilities, the homeowners' associations vote either to merge with the Club or to increase the homeowners' annual assessments and to segregate such funds for the use of the Club.

The Resolution Committee's recommendations were presented and discussed at subsequent meetings of the Wilchester West HOA. At a special meeting of the Wilchester West HOA in December 1999, a majority of the homeowners from that subdivision, appearing in person or by proxy, voted against a proposal that would

have granted membership in the Club to all homeowners and would have increased the homeowners' annual assessment by $160, with such increase to have been dedicated for the use of the Club.

In March 2000, a majority of the homeowners of the Wilchester subdivision voted by petition in favor of amending their deed restrictions to provide that each homeowner, by virtue of his lot ownership, would become a voting member of the Club and would pay a $160 increase in their annual homeowners' assessment, with such increase to be paid by the Wilchester HOA to the Club. That same month, the board of trustees of the Wilchester West HOA circulated a letter proposing a similar amendment to the deed restrictions for homeowners in the Wilchester West subdivision. Petitions were circulated to the homeowners in the Wilchester West subdivision, and a majority of the homeowners voted in favor of amending their deed restrictions as proposed.

In April 2000, representatives of the Club and of the homeowners' associations executed a "Use Agreement" memorializing the Club's agreement to extend membership to homeowners of both subdivisions in exchange for a $160 increase in the homeowners' annual assessments, to be paid by the homeowners' associations to the Club. The Club also agreed to amend its by-laws so that the Club's board of directors would be comprised of 10 homeowners, with five elected from each subdivision. The Use Agreement, as well as the amended deed restrictions for both subdivisions, were subsequently filed among the Harris County public property records.

In October 2001, WWCH sued the Club and the homeowners' associations, alleging that (1) the Wilchester West HOA had failed to comply with "the deed restrictions and applicable law" in conducting the petition drive to amend the deed restrictions,

and (2) the Use Agreement reached between the homeowners' associations and the Club violated the deed restrictions for homes within the Wilchester West subdivision. In its petition, WWCH characterized the basis for its suit as "a dispute about whether one group of homeowners can commence taxing their neighbors—indefinitely, on pain of foreclosure—to subsidize a private pool club that the neighbors do not want to join." As enumerated in its petition, WWCH sought a judgment from the trial court declaring that:

a. Wilchester West homeowners retain full authority to amend their annual assessment by majority vote as provided in the deed restrictions;

b. Wilchester West homeowners retain full authority to amend any provision of their deed restrictions, or to eliminate their deed restrictions entirely, by majority vote as provided in the deed restrictions;

c. trustees of the [Wilchester West HOA] never obtained authority to reduce homeowner powers specifically reserved in the deed restrictions;

d. neither trustees of the [Wilchester West HOA] nor any group of Wilchester West homeowners ever obtained authority to force unwilling homeowners in Wilchester West to join [the Club], or any organization except the [Wilchester West HOA]; and

e. trustees of the [Wilchester West HOA] never obtained authority to enter into the Use Agreement, and so the Use Agreement is void.

WWCH also sought recovery of its attorney's fees and costs. The homeowners' associations and the Club answered WWCH's lawsuit and generally denied its allegations.

WWCH subsequently filed a motion for summary judgment, based on the claims in its lawsuit. In its motion, WWCH asserted that

[b]y this motion, [WWCH] seeks declaratory judgments that [Wilchester West HOA] could not force homeowners to join the private club, and could not adopt the Use Agreement. As an alternative basis for relief, even if somehow [Wilchester West HOA] could make such an agreement, this motion seeks declaratory judgments that [Wilchester West HOA] did not properly obtain such authority.

The homeowners' associations and the Club responded to WWCH's motion for summary judgment and filed a joint motion for summary judgment, in which response and motion they argued that the Wilchester West HOA (1) had the authority, under the provisions of the applicable deed restrictions, to amend the deed restrictions by agreement of a majority of the homeowners; (2) as a non-profit corporation, had the authority to enter into a contract with an outside party such as the Club; and (3) made sufficient disclosures to Wilchester West subdivision homeowners to inform them of the purposes and effects of the amendments to the deed restrictions. The homeowners' associations and the Club also argued that the requested relief "would significantly impact the property rights of every owner in both subdivisions" but that the additional homeowners in the subdivisions had not been joined in the lawsuit.

Without stating the basis for its rulings, the trial court denied WWCH's motion for summary judgment and granted the joint summary judgment motion filed by the homeowners' associations and the Club.

## Declaratory Judgment

█ As noted above, WWCH sought declaratory relief from the trial court, as

558

well as attorney's fees. However, in its petition, WWCH did not expressly identify its suit as a declaratory judgment action brought under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (Vernon 1997 & Supp.2004–2005) (DJA). The DJA provides

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* at § 37.004(a). The subjects enumerated by the DJA are not exclusive. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex.1995). Because the record indicates that the nature of the relief sought by WWCH was declaratory,[2] we treat WWCH's suit as having been brought within the provisions of the DJA.[3]

### Joinder of Affected Homeowners

In their joint response to WWCH's motion for summary judgment and in their own joint motion for summary judgment, the homeowners' associations and the Club noted that the relief requested by appellant would "significantly impact the property rights of every owner in both subdivisions" and that these homeowners had not been made parties to the lawsuit. The homeowners' associations and the Club assert that summary judgment against WWCH on all of its claims was proper, in part, because WWCH had failed to join all affected homeowners as parties to the suit.

In our original opinion, we held that all other homeowners in the subdivisions whose property rights and interest were directly at stake were "indispensable parties," and WWCH's failure to join these parties deprived the trial court of subject matter jurisdiction over WWCH's declaratory judgment action. This holding was based on section 37.006 of the DJA, which provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem.Code Ann. § 37.006 (Vernon 1997). In its motion for rehearing, WWCH argues that in light of two recent Texas Supreme Court opinions, *Simpson v. Afton Oaks Civic Club*, 145 S.W.3d 169 (Tex.2004) and *Brooks v. Northglen Ass'n*, 141 S.W.3d 158 (Tex.2004), the trial court had subject matter jurisdiction over the dispute without joinder of all affected homeowners, and thus we should adjudicate the dispute on the merits.

**2.** WWCH argues on appeal that it also sought injunctive relief from the trial court. However, in its petition, WWCH did not affirmatively request such relief, but merely indicated that, at some point in the future, it might also seek some unspecified injunctive relief: "[WWCH] *may* seek a temporary injunction pending resolution of this matter, upon further pleading. As appropriate, [WWCH] will seek final injunctive relief." (Emphasis added.) We note that the law presumes that a defendant will recognize and respect the rights declared by a declaratory judgment and will abide by the judgment, but that ancillary injunctive relief may be obtained when evidence shows that the defendant will not comply with the judgment. *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433 (Tex.App.-Austin 2004, pet. denied); *see also* Tex. Civ. Prac. & Rem Code Ann. § 37.011 (Vernon 1997) (authorizing ancillary relief, including permanent injunction, to enforce declaratory judgment).

**3.** *Cf.* Tex.R. Civ. P. 71 ("When a party has mistakenly designated any plea or pleading, the [trial] court, if justice so requires, shall treat the plea or pleading as if it had been properly designated.").

In *Brooks*, a homeowners' association amended its subdivision's deed restrictions to expand the association's board and to charge late fees on unpaid assessments. 141 S.W.3d. at 161. A group of homeowners complained that the board acted outside the bounds of the deed restrictions by adopting these amendments. *Id.* The association filed suit, seeking, in part, a declaration that its actions were valid. *Id.* The homeowners counterclaimed for a declaratory judgment that the association had no authority to take the disputed actions. *Id.* The trial court granted the association's summary judgment on the merits, and the court of appeals affirmed in part and reversed in part. *Id.* At the supreme court, the association argued for the first time that the trial court lacked subject matter jurisdiction over the case because the plaintiffs failed to join all affected homeowners as parties. *Id.* at 162.

The supreme court rejected the association's jurisdictional argument, noting that the DJA provided the trial court with jurisdiction to declare the rights, status, and other legal relations for homeowners who were interested under a deed or written contract. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003(a), 37.004(a) (Vernon 1997)). The court concluded that the question was not whether jurisdiction was lacking, but rather "whether the trial court *should have refused to enter a judgment* when a subset of the homeowners was not joined in the lawsuit." *Id.* (Emphasis added.).[4]

Similarly, in *Simpson*, a homeowner sought to enjoin a subdivision from creating mandatory assessments and membership to a property owner's association. 141 S.W.3d at 170. The court of appeals dismissed the case for lack of subject matter jurisdiction because the plaintiff failed to join all property owners in his subdivision. *Id.* The supreme court, citing its decision in *Brooks*, reversed and remanded the case to the court of appeals.

■ *Brooks* provides the proper framework for the jurisdictional analysis in this case. As stated in *Brooks*, rule 39 governs joinder of persons under the DJA and "like the [DJA], mandates joinder of persons whose interests would be affected by the judgment." 141 S.W.3d at 162; *see also* TEX.R. CIV. P. 39; TEX. CIV. PRAC. & REM. CODE ANN. § 37.006. "Rule 39 determines whether a trial court has authority to proceed without joining a person whose presence in the litigation is made mandatory by the [DJA]." *Brooks*, 141 S.W.3d at 162. Rule 39(a) states:

A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

TEX.R. CIV. P. 39(a).

■ Rule 39(a)(1) "requires the presence of all persons who have an interest in

---

4. *See also Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex.1982), quoting *Cooper v. Texas Gulf Indus., Inc.*, 513 S.W.2d 200, 203 (Tex.1974) (stating that "[i]t would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction. . . ."); *Clear*

*Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 389 (Tex.1977) (finding failure to join persons whose rights might be affected by lawsuit or declaration does not "uniformly constitute[ ] a jurisdictional defect").

the litigation so that any relief awarded will effectively and completely adjudicate the dispute." *Brooks,* 141 S.W.3d at 162. Here, rule 39(a)(1) would not have precluded the trial court from reaching the merits because nothing prevented the trial court from rendering complete relief between the Wilchester West HOA and WWCH. Likewise, rule 39(a)(2)(i) would not have precluded consideration of the merits because a declaratory judgment does not prejudice the rights of any person that is not a party to the proceeding, and any non-joined homeowner would be able to pursue individual claims challenging the associations' authority to take the disputed actions, notwithstanding a ruling in this case. *Id.* at 163; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a) (stating "[a] declaration does not prejudice the rights of a person not a party to the proceeding.").

We recognize that the Club and the homeowners' associations may be subject to the possibility of inconsistent judgments since not all of the homeowners in the subdivision have been joined. However, as in *Brooks,* this possibility was caused by their "own inaction." *Brooks,* 141 S.W.3d at 163. The Club and the homeowners' associations "could have *sought relief* at trial by urging the court, among other things, to abate the case, join absent homeowners, or grant special exceptions." [5] *See id.; see also Truong v. City of Houston,* 99 S.W.3d 204, 216 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating "proper procedural tool used to raise an

issue of a defect in parties is a motion to abate" and finding that challenge to defect in parties contained in summary judgment response was insufficient to preserve issue for review); *Dahl v. Hartman,* 14 S.W.3d 434, 436 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding that trial court did not abuse its discretion in abating suit and ordering joinder of all property owners because declaratory judgment action seeking invalidation of deed restrictions would affect property interests of all owners).[6]

The Club and the homeowners' associations argue that this case is distinguishable from *Brooks* and *Simpson* because in those cases the associations presented jurisdictional arguments for the first time on appeal. While it is true that the *Brooks* court concluded that the association waived its complaint about the absence of non-joined persons, *Brooks* also indicates that the failure to join all other homeowners in the subdivision does not deprive the trial court of jurisdiction. *Brooks,* 141 S.W.3d at 162–63. In light of *Brooks* and *Simpson,* we must reject the argument that a court does not have jurisdiction to hear a case similar to the one presented here unless all property owners are joined. Instead, under *Brooks,* the Club and the homeowners' associations should have sought abatement or joinder to protect their interests, and if the trial court denied such relief, then they should have sought

**5.** While recognizing that appellees at least raised the issue of joinder in their motion for summary judgment, *Brooks* and the cases cited therein indicate that appellees did not adequately "seek relief" from the trial court on this issue. *Brooks,* 141 S.W.3d at 163. *Brooks'* holding is consistent with the policy behind rule 39(a)(2)(ii), which, by its terms, is designed to protect those persons who already are parties from being subject to inconsistent judgments. TEX.R. CIV. P. 39(a). This rule

provides a mechanism for parties seeking to avoid this risk to join necessary parties. *Id.*

**6.** Despite these alleged jurisdictional problems, instead of simply seeking a summary judgment dismissing appellant's declaratory judgment action, the Club and the homeowners' associations filed a "Motion for Partial Summary Judgment *Including Declaratory Judgment,"* seeking relief on the merits.

review of the trial court's denial of their efforts to seek such relief. *See id.*

■ The Club and the homeowners' associations also argue in their response to WWCH's motion for rehearing that WWCH is not an owner of property in Wilchester or Wilchester West and that WWCH did not present any evidence of its authority to represent owners in these subdivisions. We interpret this argument as a challenge to WWCH's organizational or associational standing. The Texas Supreme Court has set forth a three-prong test to determine whether an organization has standing to bring suit: (1) its members have standing to sue on their own behalf, (2) the interests the organization seeks to protect are germane to the organization's purpose, and (3) neither the claim nor the relief requested requires the participation of individual members in the lawsuit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 447–48 (Tex.1993); *Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 357 (Tex.App.-Austin 2003, no pet.).

■ As to the first prong, WWCH has alleged that its members have suffered an injury as a result of the actions taken by the Wilchester West HOA, and thus its members would be able to bring suit in their own right. *See Hays County*, 106 S.W.3d at 357 (finding individual members of community partnership who owned property in area impacted by disputed transportation plan had standing to sue on their own behalf). In satisfaction of the second prong, WWCH presented evidence that it was formed by a group of homeowners to challenge the amendments to the deed restrictions at issue in this case

and the actions taken by Wilchester West HOA pursuant to those amended restrictions. *See id.; Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161, 163 (Tex.App.-Austin 1996, orig. proceeding [leave denied] ) (finding suit brought by alliance to protect water quality in a certain geographic region reflected alliance's expressed purpose). Specifically, in support of its summary judgment motion, WWCH filed the affidavit of Bob Lemer, who testified that he was a homeowner in Wilchester West and the president of WWCH and that, in his capacity as president of WWCH, he represented 40 homeowners in the Wilchester West subdivision. Lemer further stated that WWCH's purpose was "to challenge the Use Agreement and resulting Pool Tax. . . ." Finally, as to the third prong, because WWCH sought declaratory relief, WWCH was not required to prove the individual circumstances of its members to obtain relief as it reasonably could be ascertained that any declaration provided would benefit the members of WWCH who were injured. *See Hays County*, 106 S.W.3d at 357–58 (stating that it could be reasonably ascertained that injunction would benefit members of community partnership who were actually injured by disputed transportation plan); *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 385 (Tex.App.-Texarkana 2003, pet. denied) (stating "[w]hen, as here, an association seeks declaratory or injunctive relief, it is reasonable to suppose that the relief sought will inure to the benefit of the injured members."). Thus, we hold that WWCH has standing to bring this action and that we may adjudicate the dispute on the merits.[7]

7. In their motion for summary judgment and in their response to WWCH's motion for summary judgment, the Club and the homeowners' associations specifically objected to

WWCH's attempt to challenge Wilchester HOA's actions. WWCH did not present any evidence that it represents homeowners in the Wilchester subdivision. Thus, the trial court

## Amendment to Deed Restrictions

In three issues, WWCH contends that the trial court erred in granting the Clubs' and the homeowners' associations' joint motion for summary judgment and in denying its own summary judgment motion. In its first issue, WWCH argues that, in the absence of the amendments to the homeowners' deed restrictions, the homeowners' associations did not have authority to enter into the Use Agreement with the Club. In its second issue, WWCH argues that the amendments to the deed restriction were not effective because they failed for lack of notice and because the petition circulated by the homeowners' associations seeking approval of the amendments contained material non-disclosures that rendered the amendments invalid. In its third issue, WWCH challenges the association's authority to enter into the Use Agreement with the Club.

 A party moving for summary judgment must conclusively prove all of the elements of its cause of action or defense as a matter of law. TEX.R. CIV. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex.1999).[8] When, as here, both sides move for summary judgment, and the trial court grants one motion but denies the other, a reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). When a summary judgment does not specify or state the grounds on which the trial court relied, the non-movant on appeal must negate any grounds on which the trial court could have relied, and we will affirm the summary judgment on appeal if any of the grounds presented in the motion is meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995); *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 (Tex.App.-Houston [1st Dist.] 2000, no pet.). In other words, a non-movant is required to show that each ground alleged in the motion for summary judgment was insufficient to support summary judgment. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

 We begin our analysis by considering whether the amendments to the deed restrictions are valid. In order to amend deed restrictions, three conditions must be met. *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 313 (Tex.App.-Fort Worth 2001, no pet.); *Hanchett v. E. Sunnyside Civic League*, 696 S.W.2d 613, 615 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). First, the instrument creating the original restrictions must establish both the right to amend and the method of amendment. *Id.* Second, the right to amend implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than its complete destruction. *Id.* Third, the amendment must not be illegal or against public policy. *Id.*

The Texas Property Code provides that an extension, addition to or modification of restrictions proposed by a property owners' association may be adopted by a num-

---

was without jurisdiction to issue a judgment with respect to any actions taken by the Wilchester HOA. *See Brooks,* 141 S.W.3d at 164.

8. In their opposing motions for summary judgment, the parties did not specify whether they sought summary judgment under rule 166a(c) or (i). *See* TEX.R. CIV. P. 166a(c), (i). However, because the parties did not allege "no evidence" grounds in their respective motions, we review the motions as having been made under rule 166a(c).

ber of methods, including "a method permitted by the existing restrictions." Tex. Prop.Code Ann. § 204.008(4) (Vernon Supp.2004–2005).

Paragraph 8.01 of Wilchester West's restrictions states:

> 8.01. Term. These restrictions and covenants shall run with the land and shall be binding upon all parties and all persons claiming under them ... unless at any time an instrument, executed by the then Owners *of a majority* of the Lots within the Property, has been filed for record *agreeing to change these restrictions* in whole or in part. (emphasis added).

■ A restrictive covenant should be liberally construed "to give effect to its purposes and intent." Tex. Prop.Code Ann. § 202.003(a) (Vernon 1995); *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 402 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *Candlelight Hills Civic Ass'n, Inc. v. Goodwin*, 763 S.W.2d 474, 477 (Tex.App.-Houston [14th Dist.] 1988, writ denied). Restrictive covenants should be interpreted using the general rules of contract construction, and words contained in restrictions should be given their commonly accepted meanings. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998). Applying these rules, paragraph 8.01 unambiguously provides the homeowners in Wilchester West with the right and the means to amend the restrictions by written consent of a simple majority of the homeowners in Wilchester West filed of record. The summary judgment evidence establishes that this right was exercised by the circulation of a petition to the homeowners in Wilchester West, that a majority of the homeowners executed consents to the amendments to the restrictions, and that the amendments and consents were filed of record.

WWCH argues that the amendments are invalid for lack of notice. However, there is no specific notice requirement contained in the restrictions. Rather, the restrictions expressly permit an amendment by filing an instrument executed by the majority of homeowners. When homeowners represented by WWCH purchased homes in Wilchester West, they were on notice that the restrictions could be changed through majority vote and that there were no specific notice requirements in order for the restrictions to be amended. *See Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex.1987); *Simms v. Lakewood Vill. Prop. Owners Ass'n, Inc.*, 895 S.W.2d 779, 788 (Tex.App.-Corpus Christi 1995, no writ). Because the restrictions do not contain any specific notice requirement of a proposed amendment to the restrictions, WWCH's notice argument fails.

WWCH also argues that the amendments are invalid because the petition circulated by the Wilchester West HOA seeking approval of the amendments contained material non-disclosures.[9] However, the

9. In its brief, WWCH alleges that the lawyer retained to represent the Wilchester West HOA during the amendment process failed to disclose certain conflicts. Specifically, WWCH alleges that the lawyer failed to disclose that he was providing legal counsel to the Club during the amendment process and that he was interested in the transaction. However, the record indicates that this lawyer was retained by the Wilchester West HOA to facilitate the transaction between the parties. A letter authored by the lawyer and addressed to the Wilchester West homeowners concerning the proposed amendments stated that the lawyer's advice and counsel was "solely related to ensuring that the process involved ... [was] valid." The lawyer also informed the residents that the majority vote would win, that all homeowners had a right to and should vote, and that those homeowners opposed to the increase in maintenance fees should vote against the proposed

petition circulated to the homeowners of Wilchester West expressly set forth the proposed amendments to the restrictions. For example, the petition specifically stated that the restrictions would be amended to provide that (1) one of the "purposes" of the Wilchester West HOA would be the "payment of an Annual Member Fee" to the Club; (2) a portion of the annual maintenance charge would be used for payment of annual fees to the Club on behalf of all homeowners; (3) such payment would be "mandatory by virtue of the agreement" between the Club and the association; and (4) annual maintenance charges would be increased by $160.00.

The trustees of the Wilchester West HOA also stated in a cover letter accompanying the petition circulated to the Wilchester West homeowners that if the petition was approved by the homeowners, the homeowners would increase their annual maintenance charge by $160.00 and the Wilchester West HOA would enter into a "contract" with the Club whereby the association would be obligated to pay annual fees to the Club on behalf of each member of the association. Thus, the petition provided the Wilchester West homeowners with the opportunity to review the exact language of the proposed amendments, and there is no evidence that the petition contained material non-disclosures or misrepresentations concerning the language of the amendments themselves.

■■■■■ Because we conclude that the proper procedures were invoked to amend the restrictions, we now consider whether the substance of the amended restrictions and the actions taken by the Wilchester West HOA pursuant to those amendments were lawful. Deed restrictions governing residential property are "generally en-

forceable when their language is clear, they are confined to a lawful purpose, and they are written within reasonable bounds." *Samms*, 23 S.W.3d at 402 (citing *Gunnels v. N. Woodland Hills Cmty. Ass'n*, 563 S.W.2d 334, 338 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ)). Under the Texas Property Code, "[a]n exercise of discretionary authority by a property's owner's association concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence" that such exercise was "arbitrary, capricious or discriminatory." TEX. PROP.CODE ANN. § 202.004 (Vernon 1995).

WWCH asserts that the amendments are illegal and against public policy. WWCH further asserts that the association's entry into the Use Agreement was "arbitrary, capricious and unreasonable." However, in *Candlelight Hills Civic Ass'n*, our sister court found that an association's purchase of a neighborhood recreational facility with the association's maintenance fund was neither unreasonable nor prohibited by law. 763 S.W.2d at 480. Similarly, in this case, we find nothing in the amendments to be illegal or against public policy. Nor do we find the associations' decision to enter into the Use Agreement with the Club to be arbitrary, capricious or discriminatory.

■■■■■ The association's decision to enter into the Use Agreement is supported by both the pre-amended and amended restrictions. The pre-amended restrictions stated that maintenance charges should be used "to promote the health, safety, welfare, and common benefit of the residents" and for "other things necessary or desirable, in the opinion of the Corporation, to

---

amendments. There is no evidence in the record that the lawyer was personally involved in or interested in the transaction, and

thus there is no support for WWCH's argument that the actions taken by the lawyer rendered the amendments void.

maintain or improve the Property or which is considered *of benefit* to the Owners." (Emphasis added.) The amended restrictions retained this broad language, generally permitting the association to use the maintenance fees for purposes benefitting the owners, but also specifically authorized the use of maintenance charges for payment of annual fees to the Club. Construing these restrictions liberally, as we are required to do, we hold that it was well within Wilchester West HOA's discretion to enter into the Use Agreement to mandate membership in and financial support of neighborhood recreational facilities.

Our holding that the Wilchester West HOA was authorized to enter into the Use Agreement with the Club is also supported by relevant provisions of the Texas Non–Profit Corporation Act and the Property Code. The Non–Profit Corporation Act grants a corporation the power to, among other things, "make contracts and incur liabilities," and "have and exercise all powers necessary or appropriate to effect any or all of the purposes for which the corporation is organized." Tex.Rev.Civ. Stat. Ann. art. 1396–2.02(A)(8), (15) (Vernon Supp.2004–2005). Furthermore, the Property Code states that an association is entitled to, among other things, "make contracts and incur liabilities relating to the operation of the subdivision and the property owners' association." Tex. Prop. Code Ann. § 204.010(a)(5) (Vernon Supp. 2004–2005). Here, after the restrictions were amended in accordance with the required procedures, the Wilchester West HOA entered into the Use Agreement. Wilchester West, an incorporated property owners' association operating with all the general rights and benefits of a such an entity was empowered to enter into this agreement pursuant to the deed restrictions and the relevant provisions of the Property Code and Non–Profit Corporation Act.

■ In support of their argument that the Wilchester West HOA's decision to enter into the Use Agreement was arbitrary, capricious, and discriminatory, WWCH points to specific terms of the Use Agreement and also complains that powers granted to the Wilchester West HOA and the Club are completely unrestricted. In regard to the specific terms of the Use Agreement, WWCH complains about the amount of the increased assessment, the duration of the Use Agreement, and the termination provisions contained in the Use Agreement. However, the amount of the increased assessment was disclosed to the Wilchester West homeowners before a majority of the homeowners voted to amend the restrictions. Additionally, Wilchester West HOA's entry into a long-term contract with restrictive termination provisions is compatible with the goals of the amendments, including long-term and continued operation of the Club and improvement of the Club's facilities.[10] WWCH argues that, absent disclosure of the specific termination clause, homeowners were entitled to assume that Wilchester West would only enter into an agreement with the Club that was terminable at the will of a simple majority of homeowners. However, there is no contractual or other legal basis for this assertion. Furthermore, accepting WWCH's assertion would restrict Wilchester West HOA and other homeowners' associations to entering into contracts that are termina-

10. The Use Agreement provides for an initial term of 20 years, to be renewed for successive terms of 5 years. The Use Agreement also provides that it may be terminated with the approval of two-thirds of the respective members of the Club and the homeowners' associations.

ble at will by a simple majority of their homeowner members.

In regard to the alleged unconditional nature of the Use Agreement, WWCH complains that there are no provisions regulating the Club's expenditure of fees generated from the residents of Wilchester West and that the Club has no obligation to act in the interest of the residents of Wilchester West. WWCH notes that since the Use Agreement imposes no conditions on the Club's expenditures, the Club could open locations far from Wilchester West, stockpile fees paid by residents of Wilchester West, or build an "overly luxurious" club house. However, the Use Agreement contains several limiting provisions. For example, the Use Agreement provides that the annual membership fee of $160.00 may not be increased without the prior written approval of Wilchester West HOA's trustees, who are elected by residents of Wilchester West. The Use Agreement also requires that the board of directors of the Club, who would be involved in making decisions related to the expenditure of fees generated from the residents of Wilchester West, consist of homeowners in the Wilchester and Wilchester West subdivisions. Additionally, as discussed above, the restrictions themselves contain several limitations on the discretionary authority of the Wilchester West HOA and require that annual maintenance fees be used to promote the common benefit of the homeowners. Moreover, we note that the directors of the Wilchester West HOA are required, by law, to discharge their duties in good faith and in the best interest of the association. *See* TEX.REV.CIV. STAT. ANN. art. 1396–2.28 (Vernon 2003). While it is clear that at least some residents of Wil-

chester West do not wish to pay a portion of their annual maintenance fees to support the neighborhood recreational facilities operated by the Club, Wilchester West HOA was authorized to enter into the Use Agreement pursuant to the deed restrictions approved by a majority of homeowners in Wilchester West, and we do not find Wilchester West HOA's decision to enter into the Use Agreement to be arbitrary, capricious or discriminatory.

Because the amended deed restrictions are valid and are not illegal or against public policy and because the Wilchester West HOA did not exercise its discretionary authority under these restrictions in an arbitrary, capricious or discriminatory manner, we overrule all three issues presented by WWCH.[11] Accordingly, we hold that the trial court did not err in denying WWCH's motion for summary judgment and in rendering summary judgment in favor of the appellees on WWCH's action for declaratory judgment.

### Conclusion

We affirm the judgment of the trial court.

---

11. In regard to WWCH's argument that the appellees circumvented the rules of statutory merger in violation of public policy by amending the deed restrictions, rather than attempt-

ing a merger with the Club, we note that nothing required appellees to consummate a merger with the Club.