Opinion issued August 29, 2023



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-22-00401-CV

———————————

**CHARLES CAUTHORN, Appellant**

**V.**

**PIRATES PROPERTY OWNERS' ASSOCIATION, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 20-CV-1940**

---

## O P I N I O N

This is an appeal from the trial court's judgment declaring that an amendment to a subdivision's restrictive covenants, imposing a minimum duration for residential leases within the subdivision, is enforceable against a property owner.

We affirm.

## Background

In April 2015, Charles Cauthorn bought property in Section 4 of the Pirates Community subdivision on Galveston Bay and began leasing the property for short terms of fewer than 90 days, earning "significant" rental income.

Properties in Section 4 are subject to recorded Restrictions, Covenants, and Conditions (Restrictions) that run with the land and create a private contractual relationship between the property owners and the Pirates Property Owners' Association (Association). The Restrictions state the developer's desire to establish and preserve "a uniform plan for the development" to benefit future owners.

When Cauthorn bought his property, he relied on the Restrictions' land-use provisions allowing owners to rent their homes without any restriction on the duration of leases:

> Land Use and Building Type. Said Lots shall be used for residential purposes only, and only one detached single-family dwelling shall be erected on any one lot. No commercial activity shall be conducted on or from any of said residential lots, except that a lot owner may from time to time rent his home for profit.

Other provisions prohibited certain temporary uses. For instance, "No structure of a temporary character, including, but not limited to, trailers, tents, shacks, mobile homes, boats and motor vehicles of all types, shall ever be maintained or used on any lot at any time as a residence, either temporarily or permanently."

The Restrictions also allowed amendments of "[a]ny part or all of the[] covenants, conditions and/or restrictions . . . at any time and from time to time by the approval of a majority of the lot owners in [the] subdivision." In 2020, Section 4 owners approved an amendment requiring leases to be for at least 90 days and have a residential purpose:

> <u>Land Use and Building Types</u>. Said Lots shall be used for residential purposes only, and only one detached single-family dwelling shall be erected on any one lot. No commercial activity shall be conducted on or from any of said residential lots, except that a lot owner may rent his or her home to another for a minimum of ninety (90) consecutive days for residential purposes.

(Amendment)

The Association notified Cauthorn that it intended to enforce the Amendment. Cauthorn sued, seeking a declaration that the Amendment was unenforceable because it removed settled rights under the original Restrictions and deprived him of "the bargain he struck" when he bought the property. The Association counterclaimed for breach of contract and sought permanent injunctive relief.

The parties agreed to a bench trial on agreed facts under Texas Rule of Civil Procedure 263.[1] After considering the agreed facts and joint exhibits, the trial court

---

[1] Under Rule 263, "Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause." TEX. R. CIV. P. 263.

3

ruled for the Association. The trial court signed a final judgment declaring the Amendment was enforceable and requiring Cauthorn to comply with it.

## Standard of Review

In an appeal from a bench trial under Rule 263, the agreed facts bind the parties, the trial court, and the reviewing court. *Tex. Farm Bureau Mut. Ins. Co. v. Minchew*, No. 01-21-00330-CV, 2023 WL 3356703, at *4 (Tex. App.—Houston [1st Dist.] May 11, 2023, no pet.) (mem. op.); *Chu v. Windermere Lakes Homeowners Ass'n*, 652 S.W.3d 899, 901 (Tex. App.—Houston [14th Dist.] 2022, pet. filed); *Patton v. Porterfield*, 411 S.W.3d 147, 153 (Tex. App.—Dallas 2013, pet. denied); *see* TEX. R. CIV. P. 263. The only issue on appeal is whether the trial court correctly applied the law to the agreed facts. *Lacis v. Lacis*, 355 S.W.3d 727, 732 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd w.o.j.). Our review is de novo. *Id.*

## Discussion

In his sole issue, Cauthorn asks: "Can new restrictive covenants adopted by amendment deprive dissenting owners of the property rights they were afforded under the original scheme of development?" He contends that Texas courts have enforced amendments that remove restrictions on land use or further the original plan of development. But because the Amendment here did neither of these things— instead it destroyed his established right to lease for short terms—it is unenforceable. Cauthorn asserts that a decision affirming the trial court's ruling would make this

4

Court an outlier, because most other states enforce new restrictions on land use only against new owners, not existing owners. Finally, he claims that the Amendment violates his constitutional right to continue leasing his property.

## A. Right to lease

To amend deed restrictions, three conditions must be met. *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 562 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). First, either "the instrument creating the original restrictions must establish both the right to amend and the method of amendment" or the amendment must have been adopted through a statutory procedure. *See Poole Point Subdivision Homeonwers' Ass'n v. DeGon*, No. 03-20-00618-CV, 2022 WL 869809, at *3 (Tex. App.—Austin Mar. 24, 2022, pet. denied) (mem. op.); *Wilchester*, 177 S.W.3d at 562. "Second, the right to amend implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than its complete destruction." *Wilchester*, 177 S.W.3d at 562. And third, "the amendment must not be illegal or against public policy." *Id.*

Three Texas courts have determined that amended deed restrictions specifying a minimum duration for leasing meet these conditions. *See Chu*, 652 S.W.3d at 902–05 (upholding 180-day minimum restriction); *DeGon*, 2022 WL 869809, at *3–4 (same); *Adlong v. Twin Shores Prop. Owners Ass'n*, No. 09-21-00166-CV, 2022 WL

869801, at *8–12 (Tex. App.—Beaumont Mar. 24, 2022, pet. denied) (mem. op.) (upholding six-month minimum restriction).

In *DeGon*, the governing declaration allowed property owners to lease their residences subject to the declaration's other provisions. *DeGon*, 2022 WL 869809, at *1. The plaintiffs began leasing their residence for short terms, and the homeowners' association amended the declaration to prohibit leasing for less than 180 days. *See id.* at *1–2. The trial court ruled that the amendment was unenforceable because it was "a new and different restriction which defie[d] the reasonable and settled expectations of the [plaintiffs], who relied on the [declaration's] grant of the right to lease the main dwelling without duration restriction and physical occupancy requirements." *Id.* But the Austin court of appeals rejected the trial court's reasoning, explaining that the plaintiffs bought their residence "knowing that the [declaration] could be amended and that the right to lease was 'subject to all provisions' in the Restrictions, including any valid amendments. For this reason, the [plaintiffs] could not reasonably have expected that there could never be restrictions placed on the right to lease their residence." *Id.* at *3 n.1. The real issues thus were whether the amendment (1) corrected, improved, or reformed the declaration, and did not destroy it, and (2) was illegal or against public policy. *Id.* at *3–4.

On the first issue, the Austin court held that the 180-day amendment, which also required lessees to occupy the property for the lease's duration, did not destroy the plaintiff's right to lease because the declaration

> [did] not grant homeowners an absolute or unlimited right to lease their residences. Instead, that right is "subject to all the provisions of" the Restrictions, which contain a provision permitting amendments. The Amendment, which was validly executed and recorded, does not completely prohibit the owners' ability to lease their residences. Rather, it imposes a minimum stay provision, establishing the minimum duration for a lease of a property owner's residence. The placing of certain conditions on the duration of a lease and the lessee's use of the leased property does not constitute "complete destruction" of the Deed Restrictions.1 The Amendment reformed the right to lease contained in the Restrictions by setting a minimum duration for any leases and requiring that the lessees use the leased property as their residence for the duration of the lease. Thus, unless the Amendment is illegal or against public policy, it constitutes an enforceable limitation on the right to lease the Property.

*Id.* at *3.

On the second issue, the court reasoned: "Modifications to deed restrictions that impose greater restrictions are not prohibited by law when they are consistent with the overall plan of development." *Id.* at *4. Because the amendment "reinforced the existing residential use and occupancy restriction and the prohibition against commercial activities," it was not illegal or against public policy.[2] *Id.* Instead,

---

[2] As support, the Austin court concluded that the Texas Supreme Court has signaled approval of amendments specifying a minimum duration for leasing. *See DeGon*, 2022 WL 869809, at *4 (citing *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 277 (Tex. 2018)). In *Tarr*, the Texas Supreme Court held that short-term rentals did not violate restrictive covenants that limited the use of properties to "residential purposes." *Tarr*, 556 S.W.3d at 291–93. The Court noted that neither the plaintiff

7

"restrictions placed upon lots for the purpose of prescribing and preserving the residential character thereof are looked upon with favor by the courts." *Id.* (quoting *Wald v. W. MacGregor Protective Ass'n*, 332 S.W.2d 338, 343 (Tex. App.—Houston 1960, writ ref'd n.r.e.)).

Similarly, when the plaintiffs in *Adlong* bought their home, the subdivision's restrictions allowed short-term rentals. *See* 2022 WL 869801, at *1–2. But the owners later amended the restrictions to provide that leases must be for at least six months, effectively banning short-term rentals and eliminating the rental income the plaintiffs earned on their property. *See id.* at *4. The trial court granted a declaratory judgment for the homeowners' association, which the Beaumont court of appeals affirmed. *Id.* at *1. The Beaumont court held that "amended or modified restrictive covenants may be enforced, against owners who acquired their property before the amendment, even if they did not vote for the amendment, when the original restrictions provided a method for amendment, that method was followed, and the

---

nor the homeowners' association had "attempted to amend the deed restrictions to specify a minimum duration for leasing—an option available to both of them under the deed's amendment provisions." *Id.* at 277; *see also JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 188 (Tex. 2022) (again observing homeowners' association was "not without recourse against conduct of short-term tenants [because] the deed restrictions permit the neighborhood to amend the covenants to restrict leasing"). Considering *Tarr*, the Austin court reasoned: "If such amendments were illegal or against public policy, the supreme court would not have described them as an available option." *DeGon*, 2022 WL 869809, at *4.

owners were on constructive notice the restrictions could be amended by amendment." *Id.* at \*11.

*Adlong* rejected many of the same arguments Cauthorn makes here. For instance, the plaintiffs argued that the amendment was not enforceable because it did not further the purpose of the existing restrictions. *Id.* at \*10. The Beaumont court disagreed, concluding that the original restrictions were adopted to create "harmonious, pleasant[,] and satisfactory living conditions." *Id.* at \*11. No evidence showed the amendment did not further that purpose. *Id.* Also like Cauthorn, the plaintiffs argued that the amendment could not be "enforced in a manner that would take away the rights of owners who bought before the amendment." *Id*. But the Beaumont disagreed, concluding that no Texas case compelled that result. *Id*.

Finally, our sister court in Houston agreed in *Chu* with the Austin and Beaumont courts that "validly passed amendments to restrictions for which purchasers had constructive notice of the possibility of amendment, should be enforced if the amendment is not illegal or against public policy." 652 S.W.3d at 903 (considering amendment to deed restriction that banned short-term leases of fewer than 180 days). We do too.

The Pirates Community, Section 4 Restrictions established the right to amend and the method for amendment. Cauthorn does not dispute that the method—majority approval—was followed or that he had constructive notice that the

Restrictions could be amended. *See Angelwylde HOA, Inc. v. Fournier*, No. 03-21-00269-CV, 2023 WL 2542339, at *3 (Tex. App.—Austin Mar. 17, 2023, pet. filed) (mem. op.) ("When buyers purchase property governed by a declaration capable of amendment, they are on notice that 'the unique form of ownership they acquired when they purchased their [property] was subject to change through the amendment process, and that they would be bound by properly adopted amendments.'" (quoting *Adlong*, 2022 WL 869801, at *9)).

By establishing a minimum duration for any leases, the Amendment did not "completely destroy" the right to lease contained in the Restrictions. *See, e.g.*, *DeGon*, 2022 WL 869809, at *3. Instead, the right is reformed. *See id.*; *see also Couch v. S. Methodist Univ.*, 10 S.W.2d 973, 974 (Tex. Comm'n App. 1928, judgm't adopted) ("Now, a change of these conditions in any or all respects is not a destruction of the contract, nor does it change the essential nature of the same. It is still a deed of conveyance."). Cauthorn may still generate income by leasing his property for at least 90 days for a residential purpose. *Cf. Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 290–91 (Tex. 2018) (defining "residential purposes" to mean "living purposes," not "business purposes," and noting that association could amend deed restrictions to add a minimum duration for leasing).

Moreover, considering our sister courts' decisions and the authorities cited there, we agree that such an amendment is not illegal or against public policy. *See*

10

*DeGon*, 2022 WL 869809, at \*4. The original Restrictions state that lots must be used for a residential purpose, allow for single-family dwellings only, and prohibit commercial activity except for owner rentals. The Amendment aligns with this scheme. *See id.*; *see also Harrison v. Air Park Est. Zoning Comm.*, 533 S.W.2d 108, 111 (Tex. App.—Dallas 1976, no writ) (holding that modification to original restrictive covenant, although more restrictive, "was consistent with the overall plan of the development and was neither unreasonable nor prohibited by law").

We therefore conclude the Amendment is valid and enforceable because it meets the requirements of (1) correcting, reforming, or improving the Restrictions rather than destroying them, and (2) is not illegal or against public policy. *See Chu*, 652 S.W.3d at 903; *DeGon*, 2022 WL 869809, at \*3–4; *Adlong*, 2022 WL 869801, at \*9, \*11.

## B. Reasonableness

Cauthorn urges us to abandon the holdings of our sister courts and instead follow courts in other states, which he contends "do not allow a new restriction to be enforced against owners who purchased under prior restrictions." According to Cauthorn, other states "employ one variety or another of a fairness or reasonableness analysis which asks whether, when compared to the original restrictions, an amendment is new and unexpected." Like the *Chu* court, "we decline to adopt such a test when the Supreme Court of Texas has not yet done so." 652 S.W.3d at 904.

11

But the Supreme Court has noted that restrictive covenants generally will be enforced if they are "within reasonable bounds." *Tarr*, 556 S.W.3d at 280. Even applying a reasonableness test here, as we have already determined, the Amendment reinforces the existing single-family residential use restriction, is consistent with the general plan or scheme of development for the subdivision, and thus is reasonable. *See Chu*, 652 S.W.3d at 904; *see also DeGon*, 2022 WL 869809, at *4 ("The minimum duration requirement created by the Amendment reinforced the existing residential use and occupancy restriction and the prohibition against commercial activities."); *Adlong*, 2022 WL 869801, at *11 ("[A]mended restrictive covenants may be enforced against an owner who bought property before the amendment, when the amendment is consistent with the general plan or scheme of development for the subdivision.").

## C. Constitutional claim

Finally, Cauthorn contends the Amendment is constitutionally infirm. He claims that recent Texas cases hold that the right to lease property for short terms is a constitutionally protected right. And because this Court may not enforce restrictive covenants that violate the United States or Texas Constitutions, we must invalidate the Amendment. *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 20–21 (1948) (invalidating state court's enforcement of restrictive covenants that denied equal protection of the laws based on race).

In support, Cauthorn cites two cases: *Zaatari v. City of Austin*, 615 S.W.3d 172 (Tex. App.—Austin 2019, pet. denied), and *City of Grapevine v. Muns*, 651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. denied). In *Zaatari*, the court considered whether a municipal ordinance regulating short-term rental properties was unconstitutionally retroactive. *Id.* at 179, 190–91. Although the court held the record *there* showed that short-term rentals were an "established practice" and a "historically . . . allowable use" for purposes of the retroactivity claim, it did not hold that the right to lease for short terms is fundamental. *Id.* at 190–91.

*Muns*—another case about a municipal ordinance banning short-term rentals—went further. There, the court held that the plaintiffs had "a fundamental leasing right arising from their property ownership," and therefore, they had "a vested right to lease their properties" that was "sufficient to support a viable due-course-of law claim." *Muns*, 651 S.W.3d at 347.

It is not clear that *Muns* represents a consensus view. This Court has held that the right to lease is not an absolute right and does not "establish[] a vested property interest." *City of Hous. v. Guthrie*, 332 S.W.3d 578, 597 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *cf. JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 186 (Tex. 2022) (a lease is "the right to use and occupy the property"); *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972) (property owners do not have a vested right to use their property in a specific

13

manner); *City of La Marque v. Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (same).

We need not resolve the issue here. *Zaatari* and *Muns* are not restrictive covenant cases. Cauthorn references authority that state courts may not enforce restrictive covenants that violate the Fourteenth Amendment to the United States Constitution. *See Shelley v. Kraemer*, 334 U.S. 1, 20–21 (1948) (invalidating state court's enforcement of restrictive covenants that denied equal protection of the laws based on race). But Cauthorn cites no authority invalidating a restrictive covenant concerning short-term rentals, or any other type of restrictive covenant, based on the constitutional limitations claimed here. Even if the state could not impede a person's established or historically allowed practice of short-term rentals, *see Zaatari*, 615 S.W.3d at 202, a restrictive covenant with similar provisions is not necessarily unconstitutional. *See Chu*, 652 S.W.3d at 904–05; *see also Covered Bridge Condo. Ass'n, Inc. v. Chambliss*, 705 S.W.2d 211, 213–14 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (holding that precedent on unconstitutional ordinance limiting cohabitation that violated family members' Fourteenth Amendment right to live together was "inapplicable" to an age-restriction covenant that prevented parent from living with child because "the restriction is created by a private contract, not

by a governmental ordinance or law"). In short, Cauthorn has not shown that the Amendment is invalid because it is constitutionally infirm.[3]

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.

---

[3] Considering our holdings, we do not address Cauthorn's attorney's fees issue. *See* TEX. R. APP. P. 47.1.

15