**Joseph J. DiGRAZIA and Thomas J. DiGrazia, Appellants,**

v.

**Gary T. OLD, D.V.M., d/b/a Dekalb Veterinary Hospital, and Ray Shumake, Appellees.**

No. 06–95–00015–CV.

Court of Appeals of Texas, Texarkana.

Argued June 13, 1995.

Decided June 15, 1995.

Rehearing Overruled July 6, 1995.

Stephen T. Arnold, Texarkana, for appellants.

Robert W. Weber, Atchley, Russell, Waldrop, Hlavinka, Gary D. Grimes, Franks & Grimes, Texarkana, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

This is a summary judgment case involving a suit by Joseph and Thomas DiGrazia to recover damages for the death of their racehorse. The trial court found that the statute of limitations barred the DiGrazias' claims and granted the defendants' motions for summary judgment. On appeal, the DiGrazias contend that the trial court erred in granting summary judgment because the summary judgment evidence raises a fact question about whether the defendants fraudulently concealed the existence of a cause of action and thus tolled the statute of limitations. We affirm the judgment in favor of one of the defendants, but otherwise reverse and remand the case for trial.

Joseph and Thomas DiGrazia owned a two-year-old thoroughbred filly, Greatmate, and had delivered the horse to Ray Shumake's racehorse training farm in Bowie County, Texas. On May 24, 1991, Shumake took the horse to veterinarian Gary Old for treatment of a tendon problem. Old treated the horse with a procedure known as pin firing, and the horse was released into Shumake's care. On June 1, 1991, Shumake returned the horse to Old because the skin on the horse's legs was sloughing. The horse remained at the veterinary hospital until June 5, 1991, when an electrical storm occurred in the area. Old found Greatmate dead in her stall that evening. The DiGrazias learned of the death on June 6, 1991. Both Old and Shumake told the DiGrazias that their horse died of electrocution.

Old performed a necropsy on the horse and determined that the potential causes of death were septicemia or electrocution, but most probably septicemia.[1] He also informed his liability carrier, Atlantic Mutual Insurance Company, about the incident. When the DiGrazias asked for the necropsy results, Old said that the records had been forwarded to Atlantic Mutual.

Atlantic Mutual contacted the DiGrazias and asked for documents confirming the ownership and potential value of the horse. The DiGrazias advised the insurance company that they were interested in making a claim for the value of the horse. In answer to the DiGrazias' request for the necropsy report, Atlantic Mutual said that the report was being evaluated and was unavailable. The DiGrazias were not told that there was a possible cause of death other than electrocution. In October 1991, Atlantic Mutual offered the DiGrazias $2,000.00 to close the case, which they rejected. On November 30, 1991, the DiGrazias received a copy of Old's records, including his necropsy notes that list septicemia as the probable cause of death.

The DiGrazias filed a negligence action against Old and the horse trainer on November 8, 1993. Old and Shumake filed motions for summary judgment, asserting that the suit was barred by a two-year statute of limitations. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). The trial court granted the motions.

---

1. Septicemia, also known as blood poisoning, involves the presence of pathogenic bacteria in the blood. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1661 (16th ed. 1989). If allowed to progress, the microorganisms may multiply and cause an overwhelming infection and death. *Id.*

The DiGrazias admit that they filed suit after the expiration of the two-year limitations period and concede that the defendants established their limitations defense as a matter of law. They contend, however, that the trial court erred in granting summary judgment because the DiGrazias raised the affirmative defense of fraudulent concealment in response to the defendants' affirmative defense of limitations.

■ In a proper case, the invocation of fraudulent concealment estops a defendant from relying upon a statute of limitations as an affirmative defense to a cause of action. *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983). Fraud vitiates whatever it touches, and a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations. *Id.*

■ To defeat summary judgment based on limitations, a party asserting fraudulent concealment has the burden to come forward with sufficient evidence to raise a fact question with respect to each element of fraudulent concealment.[2] *American Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 830 (Tex. 1994); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). The elements are (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied). When reviewing the granting of a motion for summary judgment, we view all of the evidence in the light most favorable to the nonmovant, and all doubts as to the existence of a genuine issue of material fact are resolved in the nonmov-

ant's favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985).

### Existence of an Underlying Tort

■ The veterinarian's notes on Greatmate reflect that the pin firing procedure was performed on May 24, 1991. Old prescribed penicillin following the surgery, but did not visit the horse to assess its progress or provide further care until June 1, 1991, when Shumake brought the horse back in because of the sloughing problem. For the next several days, until the horse's death, Old treated Greatmate with penicillin and other medications. Old performed a necropsy and determined that Greatmate's most probable cause of death was septicemia. Joseph DiGrazia opined that the negligence of Shumake and Old caused the death of the horse. Viewed in the light most favorable to the nonmovants, there is evidence raising a genuine fact issue concerning whether Greatmate received proper medical treatment in the weeks preceding the horse's death and whether Shumake is liable as well because the DiGrazias had entrusted the horse into his care.

### Actual Knowledge of the Wrong

■ The plaintiff asserting fraudulent concealment must show that the defendant had actual knowledge of the facts he allegedly concealed. *Baskin v. Mortgage and Trust, Inc.,* 837 S.W.2d 743, 746 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Texas Gas Exploration Corp. v. Fluor Corp.,* 828 S.W.2d 28, 33 (Tex.App.–Texarkana 1991, writ denied). A person cannot conceal facts of which he has no actual knowledge. *Baskin,* 837 S.W.2d at 746; *Texas Gas Exploration,* 828 S.W.2d at 33.

2. Old and Shumake note that the DiGrazias' pleadings do not include their fraudulent concealment theory and argue that the DiGrazias cannot rely on it as a basis for defeating summary judgment. Fraudulent concealment is an affirmative defense that must be specifically pleaded. *See* Tex.R.Civ.P. 94; *see Weaver v. Witt,* 561 S.W.2d 792, 793 (Tex.1977). Nonetheless, an affirmative defense can preclude summary judgment even if raised for the first time in response to the motion for summary judgment if no objection is made and the response is sup-

ported by proper proof. *Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 494–95 n. 2 (Tex.1991); *DeBord v. Muller,* 446 S.W.2d 299, 301 (Tex.1969); *see also McDonald v. Foster Mortgage Corp.,* 834 S.W.2d 573, 576 (Tex.App.–Houston [14th Dist.] 1992, writ denied). Old and Shumake made no objection in the trial court to the DiGrazias' failure to plead fraudulent concealment. If the DiGrazias have otherwise satisfied their burden, they may rely on the affirmative defense to preclude summary judgment.

Old treated Greatmate, he performed the necropsy on the horse, and his records show that he believed that septicemia, not electrocution, was the probable cause of death. There is evidence demonstrating that Old had actual knowledge that the horse died of septicemia and not of electrocution.

As for Shumake, there is no evidence that he actually knew that septicemia was the probable cause of death. Old asked Shumake to tell the DiGrazias of the death of their horse, but there is no evidence showing whether the veterinarian informed Shumake that septicemia was the most probable cause of death. Shumake told the DiGrazias that Greatmate had died from electrocution by lightning. He was the trainer, and he brought Greatmate back to the veterinarian because of the sloughing problem after the pin firing procedure but, at most, this evidence suggests he either might have or should have known that Greatmate died of septicemia instead of electrocution. *Cf. Baskin*, 837 S.W.2d at 746 (finding evidence suggesting defendant should have known the undisclosed fact was insufficient to support assertion of fraudulent concealment). The DiGrazias have failed to raise a fact issue regarding whether Shumake had actual knowledge that the horse most probably died of septicemia.

### Purposeful Concealment of the Wrong

The DiGrazias must also show that the defendants had a fixed purpose to conceal the facts necessary for the DiGrazias to discover that a cause of action had accrued. *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 746 (Tex.App.–Houston [14th Dist.] 1993, writ denied); *Baskin*, 837 S.W.2d at 746. The concealment must be fraudulent. *Owen v. King*, 130 Tex. 614, 111 S.W.2d 695, 697 (1938). Mere failure to disclose a cause of action or mere concealment of a cause of action, when the defendant owes no duty to disclose, is not fraudulent concealment. *Id.* The gist of fraudulent concealment is the defendant's active suppression of the truth or his failure to disclose when he is under a duty to disclose. *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 778 (Tex.App.–Hous-

ton [14th Dist.] 1993, no writ); *Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex.App.–Austin 1987, writ ref'd n.r.e.). There is no privilege to lie to a victim in order to conceal a cause of action. *Arabian Shield*, 808 S.W.2d at 586.

For the same reasons that the DiGrazias failed to establish a fact question concerning Shumake's actual knowledge, there is no evidence that Shumake was purposefully or intentionally concealing the fact that Greatmate actually died of septicemia when he informed the DiGrazias that Greatmate was electrocuted.

As for Old, he performed the necropsy on Greatmate and documented his findings, including a notation that septicemia was the probable cause of death, but when the DiGrazias asked for Old's records, the doctor informed them that he had forwarded his records to his insurance carrier. Although Old asserts that he told the DiGrazias that their horse died of either electrocution or septicemia, the DiGrazias deny this assertion. There is sufficient evidence to create a fact issue of whether Old intentionally deceived the DiGrazias about the true cause of Greatmate's death.

### Reasonable Reliance

As with any form of equitable estoppel, a plaintiff asserting fraudulent concealment must have reasonably relied on the defendant's lies or improper silence. *Arabian Shield*, 808 S.W.2d at 584. Where a defendant fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned of it through the exercise of reasonable diligence. *See Borderlon*, 661 S.W.2d at 908; *Bayou Bend*, 866 S.W.2d at 746. The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Borderlon*, 661 S.W.2d at 909. As a matter of law, knowledge of such facts is equivalent to knowledge of the cause of action. *Id.*

**504**

Old and Shumake contend that the DiGrazias, by learning of the death of their horse on June 6, 1991, had knowledge of the underlying tort as well, so the limitations period should not be tolled. Old and Shumake have confused the discovery rule with the affirmative defense of fraudulent concealment. The discovery rule is a judicially constructed test used to determine when a cause of action accrues. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). Courts have developed the discovery rule for cases when the injured party did not and could not know of his injury at the time it occurred. *Id.*

Fraudulent concealment, instead of playing a part in determining when the limitations period begins to run, tolls or suspends the running of the limitations period after it has commenced because the defendant has concealed from the plaintiff facts necessary for him to know that he has a cause of action against the defendant. *See Owen*, 130 Tex. at 617–19, 111 S.W.2d at 697; *Leonard*, 731 S.W.2d at 128. The DiGrazias admittedly knew of their injury at the time they were informed of Greatmate's death, but this is not the equivalent of knowing that they may have a cause of action against the veterinarian and trainer for negligence in treating the horse's health problems.

The DiGrazias knew of the pin firing procedure and of the horse's death two weeks later, but were informed that the horse was electrocuted. *Cf. Cherry v. Victoria Equip. & Supply, Inc.*, 645 S.W.2d 781, 782 (Tex. 1983) (finding defendant's previous denials of participation in incident created fact issue as to fraudulent concealment). The DiGrazias asked Old for his records on the horse, but were told that the insurance company had the records. The DiGrazias then asked Atlantic Mutual for the records. Atlantic Mutual said that the records were being reviewed by another veterinarian and were not available, but assured the DiGrazias that electrocution would be confirmed as the cause of death. The DiGrazias finally received a copy of the necropsy report on November 30, 1991, and for the first time learned that their horse probably died of septicemia.

Until November 30, 1991, the DiGrazias relied on continued representations that electrocution was the cause of Greatmate's death. There is a genuine issue of material fact concerning whether such reliance was reasonable.

We affirm the trial court's judgment in favor of Ray Shumake, but reverse the judgment in favor of Gary Old and remand that cause for a trial.