ACCEPTED
13-14-00324-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/31/2015 11:48:37 AM
CECILE FOY GSANGER
CLERK

**No. 13-14-00324-CV**

In the Thirteenth Court of Appeals

Corpus Christi, Texas

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/31/2015 11:48:37 AM
CECILE FOY GSANGER
Clerk

DOUBLE DIAMOND-DELAWARE, INC., DOUBLE DIAMOND, INC., WHITE BLUFF
CLUB CORP., NATIONAL RESORT MANAGEMENT CO., R. MICHAEL WARD, FRED
CURRAN, WHITE BLUFF PROPERTY OWNERS ASSOCIATION,
*Appellants*

**v.**

JEANETTE ALFONSO, EUGENIO CORPUS, FE HUEVOS, EDITH PEPITO, REYNALDO
PEPITO, SIMONETTE PEPITO, JULITO PEPITO, ELEZAR NUIQUE, CHERRY
SOMOSOT, NELIA VINCENTE,
*Appellees*

APPEAL FROM CAUSE NO. C-2259-11-F(1)
332ND DISTRICT COURT OF HIDALGO COUNTY, TEXAS
HON. MARIO EFRAIN RAMIREZ, JR. PRESIDING

## APPELLANTS' REPLY BRIEF

Brandy Wingate Voss
State Bar No. 24037046
D. Todd Smith
State Bar No. 00797451
SMITH LAW GROUP, P.C.
820 E. Hackberry Ave.
McAllen, Texas 78501
(956) 683-6330 (Telephone)
(956) 225-0406 (Fax)
brandy@appealsplus.com

Richard A. Sayles
State Bar No. 17697500
Shawn Long
State Bar No. 24047859
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 939-8700 (Telephone)
(214) 939-8787 (Fax)
dsayles@swtriallaw.com

*Counsel for Appellants*
*Double Diamond-Delaware, Inc., et al.*

# TABLE OF CONTENTS

Index of Authorities ................................................................................. ii

Argument.............................................................................................1

    I.    The Governing Documents for White Bluff authorized the fees and assessments Appellees challenge, and all on point Texas case law validates the WBPOA's actions imposing and spending such assessments.................................................1

        A.    Texas case law overwhelmingly shows that the Governing Documents authorized the maintenance fees and assessments........................................................................1

        B.    The Court should reject Appellees' unsupported assertion that the WBPOA's expenditures were improper under Article II Section 9 of the Declaration........................................6

        C.    Neither Texas case law nor the Governing Documents support Appellees' reliance on the definition of "Common Properties" to support their claims. ..........................8

    II.    Appellees' disgorgement remedy fails on several grounds. ...............11

    III.    The venue evidence submitted by Appellees remains incompetent, and Appellees have not established that Hidalgo County was even the proper venue for this action. .............................14

        A.    Appellants properly challenged all venue facts. ........................14

        B.    Appellees' venue evidence was woefully deficient..................16

        C.    Even considering Appellees' evidence, they failed to establish venue in Hidalgo County. ..........................................18

Conclusion and Prayer ........................................................................23

Certificate of Compliance ...................................................................25

Certificate of Service ..........................................................................26

# INDEX OF AUTHORITIES

**Cases**  **Page(s)**

*American Golf Corp. d/b/a Walden on Lake Houston Golf and Country Club v. Colburn*,
65 S.W.3d 277, 278-79 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) .............................................................................. 7, 8, 10

*Beadles v. Lago Vista Owners Ass'n, Inc.*,
No. 03-02-00228-CV, 2002 WL 31476657 (Tex. App.—Austin Nov. 7, 2002, pet. denied) (not designated for publication) ........................... 5

*Bleeker v. Villarreal*,
941 S.W.2d 163 (Tex. App.—Corpus Christi 1996, writ dism'd by agreem't) ........................................................................................ 16

*Burrow v. Arce*,
997 S.W.2d 229 (Tex. 1999) ........................................................................ 13

*Candlelight Hills Civic Ass'n, Inc. v. Goodwin*,
763 S.W.2d 474 (Tex. App.—Houston [14th Dist.] 1988, writ denied) .......................................................................................... 4, 5

*Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*,
74 S.W.3d 504 (Tex. App.—Corpus Christi 2002, no pet.) ........................... 12

*Crooks v. Moses*,
138 S.W.3d 629 (Tex. App.—Dallas 2004, no pet.) ..................................... 16

*DiGrazia v. Old*,
900 S.W.2d 499 (Tex. App.—Texarkana 1995, no writ) .............................. 22

*Head v. U.S. Inspect DFW, Inc.*,
159 S.W.3d 731 (Tex. App.—Fort Worth 2005, no pet.) ............................. 21

*Hsin-Chi-Su v. Vantage Drilling Co.*,
No. 14-14-00461-CV, 2015 WL 4249265 (Tex. App.—Houston [14th Dist.] July 14, 2015, no pet. h.) ................................................ 13

*In re Socorro Ind. Sch. Dist.*,
No. 13-09-00500-CV, 2010 WL 1138451 (Tex. App.—Corpus Christi-Edinburg March 22, 2010, no pet.) ............................................. 15, 20

*Lavaca Bay Autoworld, L.L.C. v. Marshall Pontiac Buick Oldsmobile,*
103 S.W.3d 650 (Tex. App.—Corpus Christi 2003, no pet., judgm't withdrawn by agr.) ...........................................................................12

*Lucke v. Kimball*,
No. 13-01-362-CV, 2004 WL 102830 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.)........................................................................12

*Newman Oil Co. v. Alkek*,
585 S.W.2d 340 (Tex. App.—Dallas 1979, no writ).....................................17

*Swinnea v. ERI Consulting Eng'rs, Inc.*,
236 S.W.3d 825 (Tex. App.—Tyler 2007), *aff'd in part, rev'd in part*, 318 S.W.3d 967 (Tex. 2010)..................................................................11

*Wilchester West Concerned Homeowners LDEF, Inc. v. Wilchester West Fund, Inc.*,
177 S.W.3d 552 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ...................................................................................... 2, 3, 10

*Yalamanchili v. Mousa*,
316 S.W.3d 33 (Tex. App.—Houston 2010, pet. denied) ............................14

**Statutes**                                                      **Page(s)**

TEX. CIV. PRAC. & REM. CODE § 15.006.......................................................... 20, 21

**Rules**                                                         **Page(s)**

TEX. R. CIV. P. 87(3)(a)....................................................................................18

TEX. R. CIV. P. 88..................................................................................... 16, 17

TEX. R. CIV. P. 197.3................................................................................ 16, 17

TEX. R. CIV. P. 198.3................................................................................. 16, 17

# ARGUMENT

**I.**    **The Governing Documents for White Bluff authorized the fees and assessments Appellees challenge, and all on point Texas case law validates the WBPOA's actions imposing and spending such assessments.**

Buried on page 50 of Appellees' Brief is their response to the central issue in the present dispute—were the actions undertaken by Appellant White Bluff Property Owners' Association, Inc. (the "WBPOA") authorized under the Declaration Regarding the Establishment of White Bluff Property Owners' Association, Inc. (the "Declaration"), among other Governing Documents for the White Bluff community? Texas case law establishes that the answer to this critical question is "yes." Thus, the challenged golf course maintenance fees and food and beverage assessments are wholly valid and enforceable.

**A.**    **Texas case law overwhelmingly shows that the Governing Documents authorized the maintenance fees and assessments.**

In Article II of the Declaration (its "Purposes and Powers"), this document contains not one but two grants of authority to the WBPOA that establish its power to impose the challenged fees and assessments. First, pursuant to Section 9 of Article II, the WBPOA may "do any other thing that, in the opinion of the Board of Directors of the Association, will promote the common benefit and enjoyment of the Owners and residents of the Property . . . ." (4RR1876). Likewise, Section 2 of Article II authorizes the WBPOA "to promote the health, safety and welfare of the

1

Owners and residents of the Property." (*Id.*). While Appellees attempt to castigate these provisions as giving the WBPOA "unbridled authority" (a rather hyperbolic assertion), all Texas courts addressing similar actions by property owners' associations possessing similar grants of authority in the governing documents have determined that the "common benefit" language absolutely authorizes the imposition of fees such as those being challenged in the present lawsuit.

In *Wilchester West Concerned Homeowners LDEF, Inc. v. Wilchester West Fund, Inc.*, the appellate court addressed and evaluated pre-amendment deed restrictions almost identical to the current restrictions at issue. 177 S.W.3d 552, 564 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). There, the court upheld the Wilchester West HOA's decision to increase yearly assessments by $160 through a "Use Agreement" designed to fund a nearby tennis and swimming club owned by a third party. The First Court of Appeals is clear about the nature of its analysis and in no way characterizes any of its holding about the deed restrictions at issue as dictum. *Id.* at 564-66. In fact, the court specifically held the assessments were authorized by language that was nearly identical to those in the WBPOA's Declaration:

> The association's decision to enter into the Use Agreement is supported by both the pre-amended and amended restrictions. The pre-amended restrictions stated that maintenance charges should be used to "promote the health, safety, welfare, and common benefit of the residents" and for "other things necessary or desirable, in the

opinion of the Corporation, to maintain or improve the Property or which is considered of *benefit* to the Owners."

*Id.* at 564. Again, the Declaration indisputably allows the WBPOA "do any other thing that, in the opinion of the Board of Directors of the Association, will promote the common benefit and enjoyment of the Owners and residents of the Property" and "to promote the health, safety and welfare of the Owners and residents of the Property." (4RR1876).

Appellees attempt to downplay this broad grant of authority by arguing that, in *Wilchester West*, the expenditures of maintenance fees for the homeowners' "common benefit" were specifically authorized by the deed restrictions. However, the same is true with respect to the White Bluff community—Section 7 of Article II in the Declaration details the wide scope by which the WBPOA can spend the proceeds it receives from assessments.

Specifically, the WBPOA is granted the authority "[t]o fix, levy, collect and enforce payment by any lawful means, all charges, fees or assessments provided for by the terms of the Covenants and *to pay all expenses in connection therewith and all office and other expenses incident to the conduct of the business of the Association . . . .*" (4RR1876) (emphasis added). Likewise, Section 2 of Article III of the Declaration authorizes the WBPOA to increase or decrease maintenance fees provided such changes in fees are "deemed reasonably necessary by the Board of

Directors of the Association to adequately maintain the Property *or to perform the Association's functions*." (4RR1877) (emphasis added).

In effect, Appellees' argument that the WBPOA's power to act for the "common benefit" of White Bluff residents does not apply to the expenditure of maintenance fees is nothing more than a contention that promoting the common benefit and enjoyment of WBPOA residents (or their health, safety, and welfare) does not constitute the WBPOA conducting its business or its functions. Such an argument strains credulity, as the Governing Documents specifically state that the "Purpose and Powers" of the WBPOA include promoting items such as the common benefit, enjoyment, health, safety, and welfare of the residents at White Bluff. Frankly, the Declaration could not be clearer—such actions are absolutely the business and function of the WBPOA. Appellees' argument is nothing more than an effort to deny the plain meaning of the Declaration (and related governing documents) in an attempt to manipulate a favorable result in this litigation.

Other cases involving a homeowners' association's expenditure of its funds in connection with recreational facilities are also instructive. In *Candlelight Hills Civic Ass'n, Inc. v. Goodwin*, the Fourteenth Court of Appeals upheld the homeowners' association's purchase of a recreational facility on the basis that its funds could be spent "doing any other thing necessary or desirable in the opinion of the Trustees of the Association to keep the property in the Subdivision neat and

4

in good order, or which they consider of general benefit to the owners or occupants of the Subdivision." 763 S.W.2d 474, 477-79 (Tex. App.—Houston [14th Dist.] 1988, writ denied). The court made clear that purchasing a recreational facility benefitted the welfare of the community: "The purchase of real property is consistent with the promotion of social and recreational activities and with taking concerted action on matters affecting the welfare of the community." *Id.* at 479.

Similarly, in *Beadles v. Lago Vista Owners Ass'n, Inc.*, the Austin Court of Appeals held that spending maintenance fees on the purchase and upkeep of certain common-area facilities (such waterfront parks, boat launches, a marina, and an activity center) was authorized by language in the restrictive covenants giving the homeowners' association the authority to use them on anything the association found "necessary or desirable." No. 03-02-00228-CV, 2002 WL 31476657, at *5-7 (Tex. App.—Austin Nov. 7, 2002, pet. denied) (not designated for publication). Again, all of the cases evaluating similar situations to the WBPOA's assessment of golf course maintenance and food and beverage fees have been decided fully in favor of giving a property owners' association broad discretion by which to promote the common benefit, enjoyment, health, safety, and welfare of its owners and residents.

**B.** **The Court should reject Appellees' unsupported assertion that the WBPOA's expenditures were improper under Article II Section 9 of the Declaration.**

Moreover, Appellees' argument that Section 9 of Article II of the Declaration[1] establishes improper expenditures by the WBPOA is baseless. *See* Appellees' Br. at 52. First, Appellees asserted no such challenge at the court below. Second, there has been no proof offered that the expenditures were paid to a "Member, director or officer of the Association, or any private individual," as not all Appellants fit these categories, and Appellees' lack of a record cite for this claim evidences the same. *See* Appellees' Br. at 53. Third, such a challenge is inherently a fact issue because the Declaration specifically allows an exception to any limitations for "reasonable compensation [to] be paid for service rendered to or for the Association related or pertaining to one or more of its purposes." (4RR1876) (emphasis added). To the extent that Appellees assert improper

---

[1] The entirety of section 9 grants the WBPOA power to:

Insofar as permitted by law, to do any other thing that, in the opinion of the Board of Directors of the Association, will promote the common benefit and enjoyment of the Owners and residents of the Property; *provided, however, that no part of the net earnings of the Association shall inure to the benefit of or be distributable to any Member, director, or officer of the Association, or any private Individual (expect [sic] that reasonable compensation may be paid for service rendered to or for the Association related or pertaining to one or more of its purposes)*; and provided further that no part of the activities of the Association shall include carrying on propaganda, or otherwise attempting to influence legislation, or participating in, or intervening in (including the publication or distribution or statements) any political campaign on behalf of any candidate for public office.

(4RR1876) (emphasis added).

inurement by an Appellant, they must establish that such compensation paid to that Appellant was unreasonable in light of the service rendered. (*See id.*). Before this briefing, Appellees have neither made such an argument nor provided such evidence (which, again, would have constituted a fact issue for a jury).

In fact, the only case cited by Appellees in connection with the crucial issue of the WBPOA's authority to impose and spend the golf course maintenance and food and beverage fees and assessments is also supportive of Appellants' position in this case. In *American Golf Corp. d/b/a Walden on Lake Houston Golf and Country Club v. Colburn*, a third-party (as opposed to a POA or HOA board) attempted to use the Declaration of Covenants, Conditions and Restrictions for Walden on Lake Houston to impose a "Minimum Dining Fee" on members of the Walden on Lake Houston Golf and Country Club. 65 S.W.3d 277, 278-79 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). More specifically, the owners of lots in this community were charged, pursuant to the Declaration, both General Assessments owed to the homeowners' association and membership dues in connection with their mandatory membership at the Country Club. *Id.* at 279. The Fourteenth Court of Appeals found that American Golf Corporation lacked the authority to impose a "Minimum Dining Fee" on the members of the Country Club through the Declaration because the only permissible charges were "dues." *Id.* at 279-80. Therefore, although it was appropriate for the governing documents to

7

require every property owner to be a dues-paying member of the Country Club, these dues were the only charges that could be levied by the Country Club under the Declaration. *Id.*

Assessing the *Colburn* decision, this Court should note that the Fourteenth Court of Appeals took absolutely no issue with a deed restriction compelling property owners to pay mandatory dues to an entity owned by a third party to the homeowners' association. Here, Appellees challenge exactly that type of payment, objecting to the imposition of golf course maintenance fees and food and beverage assessments ultimately paid to third parties. Ostensibly, Appellees' best case is supportive of exactly the sort of mandatory payment they attack in the present lawsuit.

### C. Neither Texas case law nor the Governing Documents support Appellees' reliance on the definition of "Common Properties" to support their claims.

Similarly, the Texas case law applicable to the present action disposes of another oft-repeated but effectively irrelevant argument continually advanced by Appellees herein—that regarding the definition of "Common Properties" contained in the various Governing Documents for White Bluff. Appellees have asserted, without any real support, that somehow the WBPOA's expenditures are limited to maintaining "Common Properties," "common facilities," and "Association Property." Appellees' Br. at 36-39. Appellees then cite to the Articles of

8

Incorporation for White Bluff to contend that the definition of "Common Properties" does not specifically include "golf courses" that are outside that recorded plat for the White Bluff community.[2] *Id.* at 38-39.

First, as previously addressed in Appellant's Brief on pages 44-45, this argument ignores the fact that the 1990 Bylaws do include the term "golf courses" within the definition of "Common Properties." (5CR1937). Likewise, the amended Bylaws in 2010 also explicitly state that the WBPOA had the obligation to "fund the maintenance of the golf courses."[3] (5CR1957).

More importantly, however, there is nothing in the Governing Documents limiting the WBPOA's authority to expend its funds on matters that are not "Common Properties" (however that definition is construed). Appellees' entire argument rests on the fallacy that their interpretation of "Common Properties" and related terms imposes a specific limitation on how WBPOA funds can be spent. As

---

[2] Though unrelated to the legal issues in play, Appellees' characterization of the WBPOA's alleged lack of involvement with the golf courses is insupportable. *See* Appellees' Br. at 43. For example, the Greens Committee of the WBPOA is responsible for "handl[ing] overall maintenance of the golf courses." (7CR3824).

[3] Moreover, despite the Appellees' claim in the footnote of page 7 of their Brief, Appellants have absolutely challenged the finding by the trial court that the 2010 Bylaws were not lawfully enacted. *See, e.g.,* Appellants' Br. at 4, 44-45. To reiterate this challenge to that finding, the Bylaws allowed for amendment by a vote of the membership *or* by a vote of the membership to delegate that authority to the Board of Directors. (5CR1950). In 1990, the sole member of the WBPOA delegated the power to amend the Bylaws to the Board of Directors. (8CR3971). Accordingly, there was nothing improper about the Board of Directors later amending the Bylaws to expressly allow maintenance of golf courses, as the Board had been appropriately delegated this power some time before. (*Id.*).

9

set forth above, this argument cannot withstand logical scrutiny. First, should the Governing Documents of the WBPOA have been intended to impose specific limitations on the expenditure of WBPOA funds, such documents could have specifically stated them. They do not. Second, the Declaration itself indisputably states that the WBPOA is obligated "to pay all expenses . . . incident to the conduct of the business of the Association . . . ." (4CR1876). It also states that the WBPOA can increase or decrease maintenance fees as necessary "to perform the Association's functions." (4CR1877). This business and these functions—by the very terms of the Declaration—include providing for the common benefit, enjoyment, health, safety, and welfare of the owners and residents in White Bluff. And all Texas case law, even the sole case cited by Appellees on the issue, fully supports the WBPOA's payment of these funds to a third-party owner of recreational facilities being used to benefit the WBPOA's members. *See Wilchester West*, 177 S.W.3d at 564-66; *see also Colburn*, 65 S.W.3d at 279-80.

In summary, Appellees' various challenges to the validity of the golf course maintenance fees and food and beverage assessments fail both under the terms of the WBPOA's governing documents and the Texas jurisprudence on the relevant issues.

## II. Appellees' disgorgement remedy fails on several grounds.

Appellees continue to lack a legal basis for the disgorgement remedy they seek against all Appellants. In their Brief, Appellees barely address the fact that the Final Judgment awards a blanket disgorgement remedy against all Appellants, regardless of whether it was established that a particular Appellant even received any funds paid by WBPOA members. *See* Appellees' Br. at 64 n.28. Appellees somehow try to justify this blanket remedy by stating that Appellees themselves will not obtain a double or triple recovery. *Id.* That argument is irrelevant—the issue raised by Appellants relates to the potential obligation of a non-WBPOA Appellant to pay disgorgement damages for funds it never received (or potentially had involvement). In fact, Appellees' own Brief cites *Swinnea v. ERI Consulting Eng'rs, Inc.,* for the proposition that "disgorgement is an equitable remedy by which the wrongdoer is divested of ill gotten gains." 236 S.W.3d 825, 841 (Tex. App.—Tyler 2007), *aff'd in part, rev'd in part*, 318 S.W.3d 967 (Tex. 2010). When making this assertion of law, Appellees apparently miss the irony of the disgorgement remedy they seek to uphold herein being applied against Appellants other than the WBPOA, as the fees and assessments they challenge were instituted and collected by the WBPOA. And, Appellees have made no effort whatsoever to show what, if anything, was received by the other Appellants. How can an Appellant legally be "divested of ill-gotten gains" it never even received? Put

11

simply, Appellees lack an answer as to how a blanket disgorgement remedy can be justified in this case.

Moreover, Appellants reiterate that disgorgement is simply not a remedy available to be piled on top of declaratory judgment, which is itself a remedy. *See Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 513 (Tex. App.—Corpus Christi 2002, no pet.) (holding that a declaratory judgment is an additional and cumulative remedy that does not supplant any existing remedies). Appellees do not even dispute that disgorgement is a remedy utilized in breach of fiduciary duty cases, and fail to cite one case in the entire state of Texas in which the disgorgement of allegedly ill-gotten gains was ordered pursuant to declaratory relief (or for that matter, a cause of action other than breach of fiduciary duty).[4] In fact, in a case recently decided by the Fourteenth Court of Appeals, the remedy of disgorgement is again clearly spelled out: "Disgorgement of profits is an equitable remedy appropriate when a party has breached his fiduciary duty; its purpose is to

---

[4] The cases cited in Appellees' Brief regarding the award of monetary damages are not disgorgement cases and are thus distinguishable from the relief sought by and awarded to Appellees. In *Lavaca Bay Autoworld, L.L.C. v. Marshall Pontiac Buick Oldsmobile*, the plaintiff therein brought a declaratory judgment claim asserting that it was not the recipient of overpaid funds and was contractually entitled to funds previously paid to it. 103 S.W.3d 650, 652 (Tex. App.—Corpus Christi 2003, no pet., judgm't withdrawn by agr.). The defendant then counterclaimed for declaratory judgment, breach of contract, and other causes of action in connection with the same sum of funds the plaintiff alleged it was entitled to retain. *Id.* When the appellate court determined the defendant's contractual interpretation was proper, repayment of the agreed-upon amount in dispute was ordered. *Id.* at 660. Likewise, the *Lucke v. Kimball* decision involved a jury finding of the value of a partnership interest at dissolution and possesses no relation whatsoever to a disgorgement remedy. No. 13-01-362-CV, 2004 WL 102830, at *8 (Tex. App.—Corpus Christi 2004, pet. denied) (mem. op.).

protect relationships of trust by discouraging disloyalty." *Hsin-Chi-Su v. Vantage Drilling Co.*, No. 14-14-00461-CV, 2015 WL 4249265, at \*10 (Tex. App.—Houston [14th Dist.] July 14, 2015, no pet. h.). While Appellees had at one time asserted breach of fiduciary duty causes of action against various defendants in this case (most of whom are no longer parties herein), Appellees non-suited their fiduciary duty cause action while the parties' competing motions for summary judgment were pending. (8CR3940-43, 4236-39). Thus, Appellees eliminated the one claim pursuant to which disgorgement was an available remedy. Without a favorable finding on the merits regarding the claim that gives rise to a disgorgement remedy, Appellees cannot be awarded this relief. *See Burrow v. Arce*, 997 S.W.2d 229, 239-40 (Tex. 1999) (determination of "clear and serious violation of [fiduciary] duty" necessary for disgorgement of fees paid to attorney). Moreover, disgorgement is designed to "protect relationships of trust from an agent's disloyalty or other misconduct"—a consideration not present in this case.[5] *See id.*

Finally, Appellees' contention regarding the alleged waiver of the disgorgement appeal issue cannot stand, as a trial court cannot properly grant

---

[5]     Likewise, in the present case, the benefit received by Appellees, both specific to the fees themselves (such as the 36 free rounds of golf available each year for WBPOA members and Appellees' use of credits provided in connection with the food and beverage assessments) and general to the White Bluff community, in connection with the amounts paid to the WBPOA is a material consideration that is no way addressed by the proposed blanket disgorgement remedy. (7CR3773, 3781-82).

summary judgment on a legally insufficient ground (such as disgorgement remedy unavailable in a declaratory judgment action). *See Yalamanchili v. Mousa*, 316 S.W.3d 33, 40 (Tex. App.—Houston 2010, pet. denied). Moreover, Appellees fail to mention that they did not even put the sums to be disgorged at issue until after their summary judgment motion had been granted—an issue that was raised in and addressed by Appellants' summary judgment response. (8CR3963). At that point the disgorgement issue was briefed by both sides.

## III. The venue evidence submitted by Appellees remains incompetent, and Appellees have not established that Hidalgo County was even the proper venue for this action.

Despite Appellees' best efforts, they cannot overcome the deficiencies in their venue proof. Appellees' contention that Appellants somehow failed to specifically deny venue facts is not supported by the record. But even considering the evidence Appellees presented, they failed their burden to establish venue in Hidalgo County.

### A. Appellants properly challenged all venue facts.

In their Brief, Appellees first attack Appellant's venue argument by contending that Appellants failed to specifically deny the claim that *prospective* property purchasers were contacted via phone calls from Double Diamond. Appellees' Br. at 21. Appellants then contend that the failure to deny a specifically alleged venue fact relieves them of providing prima facie proof of that venue fact

and establishes venue in Hidalgo County. *Id.* However, in paragraph 3 of the Affidavit of Stephen Miller attached to Defendants' Reply in Support of Motion to Transfer Venue, Miller specifically states that "Double Diamond has never directed marketing efforts at Hidalgo County for the purpose of soliciting *new* property owners from Hidalgo County." (3CR1654).

Likewise, the venue reply briefing points out that Appellees offer no evidence of being the recipients of any false statements via mailers, phone calls, or presentations in connection with their decision to purchase property at White Bluff. (3CR1637-41). Because the Court can consider the totality—including reply briefing—of the "allegations regarding venue in determining whether or not [the defendant] has specifically denied the venue facts," Appellants' denial of the claims about pre-purchase contacts with Hidalgo County residents requires Appellees to provide prima facie proof of these alleged contacts. *See In re Socorro Ind. Sch. Dist.*, No. 13-09-00500-CV, 2010 WL 1138451, at *4 (Tex. App.—Corpus Christi-Edinburg March 22, 2010, no pet.) (considering the denial of venue facts contained in reply briefing when determining whether the defendant had made a specific denial of the venue facts pled by the plaintiff and ultimately granting mandamus on the basis of the plaintiff's failure to establish venue).

15

**B.    Appellees' venue evidence was woefully deficient.**

As set forth in careful detail in Appellants' Brief, Appellees utterly failed to offer admissible evidence providing prima facie proof that venue is proper in Hidalgo County. *See* Appellants' Br. at 19-30. The only evidence Appellees put before the court was their own self-serving answers to interrogatories and responses to requests for admissions, supposedly "proved up" by their attorney Lynda Weaver. (2CR161-1567). But neither plaintiffs' answers to interrogatories nor their responses to admissions served on them constitute admissible evidence.

Under Texas Rule of Civil Procedure 197.3, "answers to interrogatories may be used only against the responding party"—not by the responding party. *See also Crooks v. Moses*, 138 S.W.3d 629, 641 (Tex. App.—Dallas 2004, no pet.) (holding that it was improper for a party to utilize its own interrogatory responses to defeat summary judgment, even if the other side did not object to such use). Similarly, requests for admissions are to be utilized against, not for, the specific party responding to the requests. *See* TEX. R. CIV. P. 198.3 ("A matter admitted under this rule is conclusively established as to the party making the admission . . . ."); *see also Bleeker v. Villarreal*, 941 S.W.2d 163, 168 (Tex. App.—Corpus Christi 1996, writ dism'd by agreem't).

Appellees cite to Texas Rule of Civil Procedure 88 in an effort to undermine the limitations on the use of interrogatories and requests for admissions set forth in

Rules 197.3 and 198.3 and Texas case law. *See* Appellees' Br. at 23-24. However, as Appellees' Brief hints and a review of the case law associated with this Rule establishes, there is nothing that indicates Rule 88 in any way authorizes the use of otherwise incompetent evidence in connection with a venue dispute or in any way trumps Rules 197.3 and 198.3. Moreover, the purpose of this Rule "is to enable the parties to proceed with preparation for trial on the merits, promptly and unhampered, so that the plea of privilege will not delay final disposition of the suit." *Newman Oil Co. v. Alkek*, 585 S.W.2d 340, 341 (Tex. App.—Dallas 1979, no writ). There is simply no support for the proposition that the intent of this rule is to allow the Court to consider otherwise inadmissible evidence when making a venue determination.

In addition to Appellees' illegitimate effort to rely upon their own written discovery responses to establish venue, this purported evidence from Appellees is also inadmissible. In her Affidavit seeking to "prove up" plaintiffs' venue evidence, Lynda Weaver in no way testifies that she possesses personal knowledge of the alleged facts stated in her clients' discovery responses, only noting that she is attaching true and correct copies of her clients' responses. (2CR1566). More importantly, her own clients' verifications note that the "facts set forth" in their discovery answers—the only prima facie venue "evidence" offered by Appellees—"are within my personal knowledge or based on information and belief . . . ." (*See,*

17

*e.g.,* 2CR171; *see also* 3CR1689-1711). There is no delineation which alleged venue facts are within the personal knowledge of Appellees and which are apparently based upon information and belief. (*Id.*). This, coupled with Appellees' improper attempt to rely on their own written discovery answers as venue evidence, can in no way satisfy the requirement that "[a]ffidavits shall be made on personal knowledge, [and] shall set forth specific facts as would be admissible in evidence." *See* Tex. R. Civ. P. 87(3)(a).

**C.    Even considering Appellees' evidence, they failed to establish venue in Hidalgo County.**

Even when the incompetent evidence on which Appellees attempt to rely is considered, venue has not been established in Hidalgo County. The causes of action at issue in this case arise from Appellees' decision to purchase lots in the White Bluff community, the alleged misrepresentations made to them (or disclosures withheld from them) in the context of that purchase decision, and the effect of making that purchase decision (such as the fees and assessments associated with owning a lot). Looking at the discovery answers submitted by the Appellees in this case (which have previously been detailed on pages 28 and 29 of Appellant's Brief), not one of the Appellees makes a specific factual claim providing a nexus between his or her own purchase decision and representations or actions directed by defendants to Hidalgo County. Despite this reality, in their own Brief, Appellees claim that "Double Diamond unquestionably targeted" plaintiffs

in Hidalgo County and "actively recruited the Plaintiffs in Hidalgo County." Appellees' Br. at 25-26.

In fact, what Appellees' purported evidence shows is that they were contacted by Appellants *after* the purchase decision giving rise to the claims made herein and asked to solicit other potential buyers. *See* Appellants' Br. at 27-29. Even if true, such a fact has absolutely no nexus to the property purchase transaction presently in dispute and seems to potentially relate more to the purchase decisions of unknown third parties. This is the reason Appellees literally offer no case law support in connection with this venue argument centered upon post-purchase contact between themselves and defendants.

Somewhat amusingly, on page 27 of their Brief, Appellees even cite to Appellants' own venue evidence showing that the Hidalgo County-based contact between plaintiffs and defendants occurred after their purchase decision. Appellees' Br. at 27. Here, Appellees mischaracterize the minor pre-purchase contact between the parties in Hidalgo County, omitting the statement from Stephen Miller's affidavit that the letters sent to prospective purchasers who had already agreed to tour White Bluff "simply confirm[ed] the time and date of the scheduled tour." (3CR1654). Again, such evidence completely fails to establish a connection between the property purchase decision and related events giving rise to the causes of action and Hidalgo County.

Appellees move forward to contend that the damages were "felt" in Hidalgo County when Appellees were required to pay the challenged fees and assessments from their homes there. Appellees' Br. at 28. While Appellees again cite no case law for this proposition, the reality is that Appellees undertook the obligation to pay such fees and assessments upon purchasing a lot while in Hill County, not upon any actions undertaken in Hidalgo County. *See* TEX. CIV. PRAC. & REM. CODE § 15.006 ("A court shall determine the venue of a suit based on the facts existing at the time the cause of action that is the basis of the suit accrued."); *see also In re Socorro*, 2010 WL 1138451, at *2. Particularly where Appellees are seeking to uphold a declaratory judgment finding that the fees and assessments were *per se* invalid (in addition to their other misrepresentation and transaction-based claims), the present causes of action accrued at the point of purchase, not at some later time. Again, prima facie evidence supporting Hidalgo County as the proper venue is lacking.

Finally, again without citing any case law, Appellees make an extensive argument that defendants' alleged "failures to disclose" various matters related to the purchase transaction establishes venue in Hidalgo County. Appellees' Br. at 30-34. Among other non-disclosure allegations, Appellees claim that defendants did not disclose the "assessment scheme," did not disclose that lot owners pay assessments to maintain property not owned by the WBPOA, did not disclose the

20

amounts of fees and assessments, and made conflicting statements about the assessments and that Appellees were handed a large stack of paperwork at the time of sale and were subject to high pressure sales tactics. (*Id.*). However, to the extent such wrongdoing occurred (and Appellants entirely deny it did), it occurred in Hill County during the sales presentations or at the point of sale. Inherently, a failure to disclose argument is premised upon non-disclosures and inaction that took place prior to the plaintiffs' decision to purchase at White Bluff—made in Hill County— and upon which plaintiffs relied when making their purchase decision. *See* TEX. CIV. PRAC. & REM. CODE § 15.006; *see also Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 744 (Tex. App.—Fort Worth 2005, no pet.) (the elements of a failure to disclose under the DTPA include a failure to disclose information, the information being known at the time of the transaction, the failure to disclose being intended to induce the purchaser into a transaction, and the purchaser would not have entered into the transaction had the disclosure been made). Had no purchase been made in Hill County, there cannot be a failure to disclose allegation.

In fact, plaintiffs' own live pleading at the time of the venue hearing specifically identifies the issue to which Appellees' later "discovery" of the alleged failures to disclose is relevant. In paragraph 46 of Plaintiffs' Third Amended Petition, plaintiffs allege that "fraudulent concealment" by defendants tolled the running of the statutes of limitations against plaintiffs' claims. (1Supp.CR70.)

However, fraudulent concealment is itself a defense to a statute of limitations affirmative defense, and is not an affirmative cause of action relevant to a venue analysis. *See DiGrazia v. Old*, 900 S.W.2d 499, 502-04 (Tex. App.—Texarkana 1995, no writ) (detailing the nature of a fraudulent concealment defense).

Finally, Appellees argue that, because they possessed seven days with which to back out of the lot purchase transaction in White Bluff, venue is appropriate in Hidalgo County (as the residence of plaintiffs). Appellees' Br. at 33. That said, Appellees have cited to no evidence that any of them considered backing out of the purchase transaction in this seven-day period (while located in Hidalgo County or elsewhere). *Id.* Appellees likewise offer no evidence that they were even in Hidalgo County at this time. *Id.* This evidence is lacking because Appellees have raised this argument for the first time on appeal, and it has thus been waived.

In summary, defendants specifically denied the venue facts pleaded by plaintiffs, and have demonstrated here and in their prior Brief that Hidalgo County is not a proper venue for this dispute and Dallas County is. Appellees not only rely entirely on inadmissible and incompetent evidence in this venue dispute, but their own arguments also establish that their causes of action did not accrue based on conduct occurring in Hidalgo County. As such, from its beginning, this case should have been heard in Dallas County (alongside the larger action already pending there).

# CONCLUSION AND PRAYER

For the foregoing reasons, the trial court erred when granting summary judgment against Appellants declaring that the WBPOA lacked the authority to impose and collect golf course maintenance fees and food and beverage assessments from Appellees, as well as ordering the disgorgement of any such fees collected by the WBPOA. Likewise, the trial court erred by denying Appellants' motion to transfer venue, and as such the judgment must be reversed. Appellants request that the Court reverse the final judgment in favor of Appellees and render the judgment that the trial court should have rendered—granting Appellants' motion for summary judgment and/or transferring this action to Dallas County. Alternatively, Appellants request that the Court remand this matter to the trial court on any outstanding issues yet to be heard. Finally, Appellants request that costs of this appeal be assessed against Appellees and that the Court grant Appellants any other and further relief to which they are justly entitled.

Respectfully submitted,

/s/ *Brandy Wingate Voss*
Brandy Wingate Voss
State Bar No. 24037046
SMITH LAW GROUP, P.C.
820 E. Hackberry Ave.
McAllen, TX 78501
(956) 683-6330 (Telephone)
(956) 225-0406 (Facsimile)
brandy@appealsplus.com

John D. Sloan, Jr.
State Bar No. 00792080
Douglas W. Lukasik
State Bar No. 24046326
Abigail Mathews
State Bar No. 24013114
SLOAN MATNEY, LLP
3838 Oak Lawn, Suite 1200
Dallas, Texas 75219
Sloan Telephone: (214) 253-0101
Lukasik Telephone: (214) 253-0103
Mathews Telephone: (213) 253-0105
Facsimile: (214) 237-5474
jsloan@sloanmatney.com
dlukasik@sloanmatney.com
amathews@sloanmatney.com

Chris Franz
State Bar No. 00792514
Gil Peralez
State Bar No. 00791426
PERALEZ FRANZ LAW
1416 Dove Avenue
McAllen, Texas 78504
Telephone: (956) 682-3660
Facsimile: (956) 682-3848
ccf@peralezfranzlaw.com
gpp@peralezfranzlaw.com

*Counsel for Appellants Double Diamond Delaware, Inc., Double Diamond, Inc., White Bluff Club Corp., National Resort Management Co., R. Michael Ward, and Fred Curran*

/s/ Shawn Long with permission by Brandy Wingate Voss
Richard A. Sayles
State Bar. No. 17697500
Shawn Long

24

State Bar No. 24047859
Darren Nicholson
State Bar No. 24032789
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787
dsayles@swtriallaw.com
slong@swtriallaw.com
dnicholson@swtriallaw.com

Mike Mills
ATLAS & HALL, L.L.P.
818 Pecan Blvd.
P.O. Box 3725
McAllen, Texas 78502-3725
Telephone: (956) 682-5501
Facsimile: (956) 686-6109
mkmills@atlashall.com

*Counsel for Appellant White Bluff Property Owners Association, Inc.*

# CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i), if applicable, because it contains 5,643 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss

25

# CERTIFICATE OF SERVICE

On July 31, 2015, in compliance with Texas Rule of Appellate Procedure 9.5 or Local Rule 3(c), I served this document on the following counsel of record by e-service, e-mail, and/or first-class United States mail:

Thad D. Spalding
F. Leighton Durham
KELLY, DURHAM & PITTARD, LLP
P.O. Box 224626
Dallas, Texas 75222
Email: tspalding@texasappeals.com

Lynda Lee Weaver
LAW OFFICES OF LYNDA LEE WEAVER
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Email: llw@llweaverlaw.com

Martin E. Rose
Christopher M. McDowell
ROSE WALKER, LLP
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Email: cmcdowell@rosewalker.com

Barbara T. Hale
BLANSCET, HOOPER & HALE, LLP
14285 Midway Road, Suite 400
Addison, Texas 75001
Email: bhale@metrocrestlaw.com

Preston Henrichson
LAW OFFICES OF PRESTON HENRICHSON, P.C.
222 West Cano
Edinburg, Texas 78539
Email: preston@henrichsonlaw.com

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss

26