# NO. 12-18-00261-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RONALD RODDY, JAY BLINT, PATSY JONES, KENNETH MANGHAM AND SHONNA L. MULKEY, APPELLANTS* | *§* | *APPEAL FROM THE 402ND* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *HOLLY LAKE RANCH ASSOCIATION, INC., APPELLEE* | *§* | *WOOD COUNTY, TEXAS* |

## *OPINION*

Ronald Roddy, Jay Blint, Patsy Jones, Kenneth Mangham, and Shonna L. Mulkey (collectively Appellants) appeal the trial court's declaratory summary judgment and award of attorney's fees rendered in favor of Appellee Holly Lake Ranch Association, Inc. Appellants raise three issues on appeal. We reverse and render in part, remand in part, and affirm in part.

## BACKGROUND

Holly Lake Ranch is a planned community with multiple subdivisions located in Wood County, Texas. Its amenities include a golf course, a clubhouse, and a restaurant. The community has grown in phases since it originated and, now, has thirty-two subdivisions, each with its own deed restrictions.

The Holly Lake Ranch Association (HLRA) is an incorporated nonprofit entity that serves as the homeowners' association for the community. According to its articles of incorporation, HLRA was formed for the purpose of "holding, maintaining[,] and developing the common or recreational facilities which have been installed or are to be installed for the beneficial use and enjoyment of the owners of lots" in the community. The articles further set forth HLRA's purposes as "charging fees and assessments of the members of the corporation for any purpose" and

"adopting such rules and regulations for the use of property held by the corporation as may be necessary." Each owner in the community is required to be a member of HLRA and is subject to its bylaws[1] in addition to the deed restrictions of the subdivision in which the lot is located.

HLRA's bylaws set forth its purpose of facilitating the fulfillment of the purposes provided in HLRA's articles of incorporation and state that they are subject to the deed restrictions. The bylaws further set forth that member voting rights follow the rule of one vote per member regardless of the number of lots owned. But the bylaws also specify that in a property owner vote to amend deed restrictions, the rule stated in the deed restrictions of one vote per lot owned shall be followed.

The bylaws set forth the authority of HLRA's board of directors, in pertinent part, as follows:

> The business and affairs of the association shall be managed by its Board of Directors, who may exercise all such powers of the Association and do all such lawful acts as are permitted by the Texas Business Organizations Code, the Texas Property Code, other governing statutes, the Articles of Incorporation, the Deed Restrictions, and these Bylaws, subject however, to the prohibitions stated herein. The board of directors may not[,] . . . without the approval of fifty-one percent (51%) of the members voting in a binding referendum [impose] [a]ssessments of any kind.

The bylaws further place the authority in the board of directors to alter, amend, or repeal the bylaws, subject to the members' right to modify or divest the board of directors of this authority by a majority vote.

The instant case concerns amendments to the deed restrictions passed in several of the subdivisions. Paragraph 18 of the deed restrictions sets forth, in pertinent part, as follows:

> [M]embership shall also be conditioned upon payment, when due, of such dues, fees, and maintenance charges as the Association shall find necessary for the maintenance of the Association facilities and services, including but not limited to the maintenance of lanes, roads, parks, club house and lakes and any other services and benefits which said Association may provide for the benefit of the lots, Association facilities, and Members.

Paragraph 18 further sets forth that members are to be subjected to an annual fee and maintenance charge per lot, which is secured by a vendor's lien on the lot. It further states that the developer may waive, either temporarily or permanently, the fee and maintenance charge against any lot or

---

[1] The bylaws were amended effective December 5, 2015.

2

tract if its owner has purchased another lot or tract within the subdivision which is subject to such charges.

Moreover, Paragraph 26(c) of the deed restrictions sets forth as follows:

> Any or all of the restrictions, covenants[,] and conditions herein contained may be repealed, amended[,] or modified at any time by a majority vote of the lot owners in the Subdivision, each then existing lot entitling its owner to one(1) vote. Such repeal, amendment[,] or modification shall be effected by an instrument in writing executed by such majority of said lot owners, and filed of record in the Office of the County Clerk of Wood County, Texas.

Between 2014 and 2017, property owners from multiple subdivisions voted to amend their respective deed restrictions. Although the outcome and number of amendments varied by subdivision, the resulting amendments relevant to this matter are summarized as follows:

- Addition of a 51% voting requirement for dues, assessments, or fees.

- Confirms that each lot entitles owner to one vote.

- Provides mandatory waiver of duplicate dues, fees, and/or assessments for additional lots. Waiver applies to subsequent buyers with multiple lots.

- Amount of monthly dues changed.

- Restricts lien to dues, fees, or assessments for construction or repair.

HLRA filed the instant suit on August 30, 2017, seeking a declaratory judgment that the amendments are void. It further alleged breach of contract and sought monetary relief, injunctive relief, and attorney's fees. Thereafter, it filed a traditional motion for summary judgment, to which Appellants responded.

The trial court granted HLRA's motion for summary judgment and, ultimately, rendered a declaratory judgment that (1) the amendments to the subdivision restrictions at issue are void and of no further legal effect and (2) votes cast by members of the Holly Lake Ranch subdivision members in the future will be allocated as follows: "each member who owns a lot is entitled to one vote, regardless of how many lots that member might own, and regardless of how many persons, or entities, might share the ownership rights to that member's lot." The trial court also awarded attorney's fees to HLRA. This appeal followed.

3

## DECLARATORY JUDGMENT

In their first issue, Appellants argue that the trial court erred in granting summary judgment in favor of HLRA and rendering a declaratory judgment that the amendments at issue are void. In their second issue, Appellants argue that the trial court erred in granting summary judgment in favor of HLRA and rendering a declaratory judgment that the deed restrictions allocated votes for an amendment at one vote per member regardless of the number of lots owned by that member.

### Standards of Review

To prevail on a traditional Rule 166a(c) summary judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A plaintiff moving for a traditional summary judgment must conclusively prove all essential elements of its claim. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

On appeal, we review de novo a trial court's summary judgment ruling. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In our review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *English v. B.G.P. Int'l, Inc.*, 174 S.W.3d 366, 370 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

In reviewing a declaratory judgment, we refer to the procedure for resolution of the issue at trial to determine the applicable standard of review on appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2015); *English*, 174 S.W.3d at 370; *see also Gen. Agents Ins. Co. of Am. v. El Naggar*, 340 S.W.3d 552, 557 (Tex. App.–Houston [14th Dist.] 2011, pet. denied). Here, because the trial court resolved the declaratory judgment issues by ruling on motions for summary judgment, we review the propriety of the trial court's grant of the declaratory judgment under the same standards applicable for review of summary judgments. *See English*, 174 S.W.3d at 370. Therefore, we must determine whether the trial court properly granted HLRA's declaratory judgment requests and, if not, render the judgment which should have been rendered by the trial court. *See id.*

4

**Construction of Section 26(c)**

We first consider whether the trial court correctly construed Section 26(c). A restrictive covenant is a contractual agreement between the seller and the purchaser of real property. *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App.–San Antonio 2008, no pet.). When construing a restrictive covenant, appellate courts apply general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Ski Masters*, 269 S.W.3d at 668. Covenants are examined as a whole in light of the circumstances present when the parties entered into the agreement. *Ski Masters*, 269 S.W.3d at 667. The reviewing court's primary intent is to ascertain and give effect to the true intention of the parties as expressed in the instruments. *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.–Austin 2007, pet. denied). A restrictive covenant should be liberally construed "to give effect to its purposes and intent." TEX. PROP. CODE ANN. § 202.003(a) (West 2014). A trial court's construction of a restrictive covenant is reviewed de novo. *Owens*, 241 S.W.3d at 129.

As set forth previously, Section 26(c) states, in pertinent part, that any of the restrictions may be amended by a majority vote of the lot owners in the subdivision, *each then existing lot entitling its owner to one vote*. Appellants argue that this italicized clause means that, for example, if someone owns three lots in the subdivision, that person is entitled to three votes regarding a proposed amendment to the deed restrictions. On the other hand, HLRA contends that this language is intended to address only a situation wherein a lot has multiple owners and to restrict each lot to one vote, regardless of the number of lot owners. But the mere fact that the parties disagree about its meaning does not make an otherwise straightforward instrument ambiguous. *See Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 665 (Tex. App.–Houston [1st Dist.] 2000, pet. denied). Nor does an ambiguity arise just because the parties' respective interpretations of the instrument conflict sharply. *See id.* Only if the instrument is subject to more than one reasonable interpretation can it be ambiguous. *See id.*

Here, the trial court found that the plain meaning of Paragraph 26(c) is that "each member who owns a lot is entitled to one vote, regardless of how many lots that member might own, and regardless of how many persons, or entities, might share the ownership rights to that member's lot." We disagree.

Paragraph 26(c) makes no reference to multiple lot owners in the context of allotment of votes. Rather, it sets forth that the success of an amendment depends on a majority vote of a

5

subdivision's lot owners, but it allots votes based on the number of lots, each of which entitles its "owner" to one vote. Thus, if there are one hundred lots in a subdivision, one hundred votes may be cast. Had the drafting parties intended to address only a situation wherein a lot had multiple owners, they could have so stated. But we cannot conclude based on a reasonable interpretation of the language used that they intended this clause to address only such an eventuality. Based on our reading of the plain language of Paragraph 26(c), we conclude that it unambiguously states that vote allotment on an amendment to the deed restrictions is based on the number of lots and, regardless of the number of owners a lot may have, and each lot is allotted one vote. Appellants' second issue is sustained.

## Validity of the Amendments

We next review the propriety of the trial court's declaratory judgment that the amendments to the deed restrictions are void.[2] In order to amend deed restrictions, three conditions must be met. *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 562 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). First, the instrument creating the original restrictions must establish both the right to amend and the method of amendment. *Id.* Second, the right to amend implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than its complete destruction. *Id.* Third, the amendment must not be illegal or against public policy. *Id.*

Among HLRA's several arguments against the various amendments is that they are void because they are illegal in that they violate Texas Business Organizations Code, Chapter 22. "Illegal" means "not according to or authorized by law." *Illegal*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011).

Section 22.202(a) sets forth in pertinent part as follows:

> The certificate of formation of a corporation may vest the management of the affairs of the corporation in the members of the corporation. If the corporation has a board of directors, the corporation may limit the authority of the board to the extent provided by the certificate of formation or bylaws.

---

[2] Even though it appears as though the trial court based its ruling that the amendments are void on its construction of Section 26(c), we "must uphold a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment." *In re Estate of Hutchins*, 391 S.W.3d 578, 585 (Tex. App.–Dallas 2012, no pet.).

6

TEX. BUS. ORG. CODE ANN. § 22.202(a) (West 2012).  The articles of incorporation set forth that HLRA may have members, and "the rights, privileges, and obligations of such membership shall be set forth in the corporate bylaws."  The bylaws for HLRA set forth, in pertinent part, as follows:

Article IV:  Board of Directors

**Section 1** - Management.  The business and affairs of the Association shall be managed by its Board of Directors, who may exercise all such powers of the Association and do all such lawful acts as are permitted by the Texas Business Organizations Code, The Texas Property Code, other governing statutes, the Articles of Incorporation, the Deed Restrictions, and these Bylaws, subject, however, to the prohibitions stated herein.  The Board of directors may not take any of the following actions without the approval of fifty-one percent (51%) of the members voting in a binding referendum:

(a)  Assessments of any kind.  An assessment shall be defined as any levy of a specific amount imposed on the membership for (a) a specific project for a specific length of time or (b) as a lump sum.  This provision shall not apply to dues levied to meet the requirements of an annual operating budget or dues levied to meet the requirements of a court order or mandated by law.

(b)  Any proposal for a capital improvement (including but not limited to new construction or refurbishment of existing facilities) with an estimated cost provided by a competent contractor or professional designer, in excess of one hundred and fifty thousand ($150,000) dollars.

. . . .

(e)  Overturn or modify any action passed through a referendum vote of the membership held pursuant to this article.

The bylaws further set forth that voting rights thereunder follow the rule of "one vote per member, regardless of the number of lots owned."[3]  Moreover, the bylaws state that the "Board of Directors shall have the power to alter, amend, or repeal these Bylaws or adopt new bylaws at any regular or special meeting . . . subject, however, to the rights of the members to modify or divest such power by a majority of the votes of the members."

*Requiring Vote on Assessments, Fees, or Dues*

We first consider the amendment to the deed restrictions requiring a majority vote (based on number of lots owned) before HLRA may levy any assessments, fees, or dues.  We also consider an amendment raising the monthly dues.  Based on our review of the articles of incorporation and bylaws, it is apparent that HLRA, in accordance with Section 22.202, vested broad authority in its board of directors to manage and operate HLRA as a nonprofit corporation, subject to certain

---

[3] The bylaws also state that multiple owners of a lot shall be considered one member and lots with multiple owners shall be entitled to one vote.

7

specified exceptions where a member vote is required. The amendments to the deed restrictions at issue result in placing requirements on HLRA that run afoul of its corporate bylaws, the management authority of the board of directors, and the voting rights of members where applicable. Specifically, by creating a voting requirement for the board's ability to levy dues, assessments, or fees under the deed restrictions on a subdivision basis, such amendments divest HLRA members, as a whole, of their right to vote on assessments under Article IV, Section 1(a) of the bylaws. Further, Article VIII of the bylaws vests authority in the board of directors to change the amount of dues subject to a ten percent cap on the dues charged the previous year. Such amendments further divest HLRA membership of its one vote per member voting calculation under the bylaws as it relates to the board of director's authority to levy assessments.

*Waiver of Duplicate Fees, Assessments, and Dues for Owners of Multiple Lots*

We next consider the amendments that seek to provide a mandatory waiver of duplicate fees, and/or dues for owners who own more than one lot. Prior to amendment, the deed restrictions set forth, in pertinent part, as follows:

> The Developer may waive, either temporarily or permanently, the fee and maintenance charge against any lot or tract if the owner has purchased another lot or tract within the Subdivision which is subject to the charges. It is understood that the judgment of the Developer (or the Association, as the case may be) in the expenditure of said fund shall be final so long as such judgment is exercised in good faith.

The bylaws state that each member of HLRA shall be assessed an annual maintenance fee in the form of dues, which are calculated on a per lot basis. As set forth above, the bylaws set forth the broad authority of the board of directors to manage HLRA in accordance with Section 22.202(a). It further sets forth that the board of directors shall have the power to alter, amend, or repeal the bylaws or adopt new bylaws subject to the right of members to modify or divest such power by a majority vote. And while the bylaws are subject to the deed restrictions, the deed restrictions, prior to their amendments, were consistent with the broad authority granted to the board of directors in the bylaws by giving HLRA discretion to waive a fee or maintenance charge. These amendments undermine the authority of the board of directors by dispossessing it of this discretion, contrary to the authority afforded to it in accordance with Section 22.202.

*Restriction of Liens to Cover Approved Assessments, Fees, or Dues*

We finally consider the amendments restricting HLRA's liens. Prior to their amendments, the deed restrictions set forth that each lot owner, as a condition to the acquisition of title to any

lot, shall have a lien upon the subject lot to secure payment of dues, fees, and maintenance charges. By the amendments, the aforementioned liens cover only "approved" assessments, fees, or dues. As set forth above, the amendments to the deed restrictions requiring approval of assessments, fees, or dues result in placing requirements on HLRA that run afoul of its corporate bylaws, the management authority of the board of directors, and the voting rights of members where applicable and, further, divest HLRA membership of its one vote per member voting calculation under the bylaws.

## Summation

Because the amendments contravene the statutory management authority granted to HLRA's board of directors in accordance with Section 22.202(a), they are not authorized by law and, therefore, are illegal. *See illegal*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011). Because they are illegal, these amendments are void. *See Wilchester W. Fund, Inc.*, 177 S.W.3d at 562. Appellants' first issue is overruled.

## ATTORNEY'S FEES

In their third issue, Appellants argue that the trial court abused its discretion awarding HLRA attorney's fees. Specifically, they argue that the award was improper because (1) HLRA failed to provide notice pursuant to Texas Property Code, Section 209.006(a), (2) HLRA is not entitled to recover attorney's fees for its breach of contract claim and, therefore, not entitled to recover under the Declaratory Judgment Act, and (3) the award of attorney's fees was not equitable and just.

## Notice Pursuant to Section 209.006(a)

We first consider whether HLRA was required to give notice pursuant to Section 209.006(a). Section 209.006(a) sets forth as follows:

> Before a property owners' association may suspend an owner's right to use a common area, file a suit against an owner other than a suit to collect a regular or special assessment or foreclose under an association's lien, charge an owner for property damage, or levy a fine for a violation of the restriction or bylaws or rules of the association, the association or its agent must give written notice to the owner by certified mail.

TEX. PROP. CODE ANN. § 209.006(a) (West Supp. 2019). A property owners' association's recovery of attorney's fees under this chapter is predicated on its provision of written notice under Section 209.006(a). *See id.* § 209.008 (West. 2014).

9

The notice requirement in Section 209.006(a) is mandatory, but not jurisdictional. *See Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 590 (Tex. App.–Austin 2015, no pet.). A party may, however, waive this mandatory requirement by failing to timely object since the notice provision may be cured by a defendant's timely request for abatement to allow for provision of the notice. *See id.* In most cases, abatement must be requested with the filing of an answer or very soon thereafter to be timely. *See id.* at 589–90 (citing *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992)).

In the instant case, Appellants filed their original answer on September 25, 2017. They did not file a motion to abate until January 8, 2018. Even assuming arguendo that a motion to abate filed more than three months after an answer is timely, Appellants' motion to abate made no reference to the notice provisions of Section 209.006(a).[4] *See* TEX. R. APP. P. 33.1(a). Therefore, we conclude that Appellants waived the notice requirement of Section 209.006(a), if applicable.[5]

**Availability of Attorney's Fees Absent Viable Breach of Contract Claim**

We next consider Appellants' argument that HLRA "is not entitled to recover attorney's fees for its breach of contract claim and is[,] therefore[,] not entitled to recover attorney's fees for its declaratory judgment action." Specifically, Appellants argue that the declarations sought by HLRA duplicate issues already before the trial court by reason of its breach of contract cause of action.[6]

In *MBM Financial Corporation v. Woodlands Operating Company*, the plaintiff sued for breach of contract, fraud, and sought a declaratory judgment. *See* 292 S.W.3d 660, 663 (Tex. 2009). At trial, the plaintiff recovered no damages on its breach of contract and fraud claims. *See id.* In reaching its holding, the supreme court set forth the following rule:

> [W]hen a claim for declaratory relief is merely tacked on to a standard suit for a matured breach of contract, allowing fees under [the declaratory judgment statute] would frustrate the limits Chapter 38 imposes on such fee recoveries. And granting fees under [the declaratory judgment statute] when they are not permitted under the specific common-law or statutory claims involved would violate the rule that specific provisions prevail over general ones.

---

[4] Based on our review of the record, the first reference Appellants made to Section 209.006 is in their Second Amended Answer, which they filed on August 15, 2018.

[5] HLRA argues that Section 209.006(a)'s notice requirement is inapplicable to the case at hand. In resolving this portion of Appellants' third issue, we assume, without deciding, that Section 209.006(a) applies to this case.

[6] At oral argument of this case, HLRA conceded that it could not yet demonstrate damages on its breach of contract cause of action.

*Id.* at 670. Applying this rule to the facts before it, the court determined that although the plaintiff obtained five declarations, these declarations merely duplicated the issues raised in the fraud and contract claims. *See id.* at 671. As a result, the court held that the plaintiff could not recover attorney's fees under the declaratory judgment statute. *See id.* at 670–71.

In the instant case, HLRA alleged that Appellants are liable for breach of contract based on their violation of deed restrictions, to which they are bound by virtue of their purchase of property within the subdivision, and by virtue of their respective HLRA memberships, which further are conditioned on the payment of dues. HLRA also alleged that Appellants "breached their agreement[s] by causing to be filed amendments to the restrictive covenants, which usurp the authority of HLRA to carry out its duty to properly manage the subdivision" and implicitly expressing that "they will not agree to be subject to the maintenance charges as [HLRA] shall find necessary for the maintenance of . . . facilities and services." Among the reasons HLRA sought a declaratory judgment was that the amendments are void because they are illegal because they conflict with Texas Business Organizations Code, Section 22.202(a). These allegations are similar in that they arise out of Appellants' undertaking to amend the various deed restrictions of the subdivisions. However, there is a distinction between HLRA's breach of contract cause of action, which addresses how Appellants' actions breached restrictions to the extent that such restrictions constituted a contractual agreement between them, other subdivision residents, and/or HLRA,[7] and its declaratory judgment action, which sought, among other reasons, to have the amendments to the deed restrictions declared void under the common law. *See* **Wilchester W. Fund, Inc.**, 177 S.W.3d at 562.[8] We conclude that the allegations underlying HLRA's declaratory judgment action are not part and parcel to its breach of contract cause of action against Appellants. Therefore, its recovery of attorney's fees is not impermissible on this basis. *Cf.* **MBM Fin. Corp.**, 292 S.W.3d at 670–71.

---

[7] *See, e.g.*, **Ski Masters**, 269 S.W.3d at 667 (restrictive covenant is contractual agreement between the seller and the purchaser of real property).

[8] HLRA's declaratory judgment action also is based on allegations concerning the correct interpretation of Paragraph 26(c) of the deed restrictions. Neither the trial court's nor this court's interpretation of the language in Paragraph 26(c) has any bearing on whether Appellants breached any deed restrictions and, thus, their contractual relationship with HLRA. Rather, as the trial court found, the result of a finding on this issue in HLRA's favor resulted in the amendments' being void.

**Attorney's Fees Must Be "Equitable and Just"**

Lastly, we consider Appellants' argument that the trial court's award of attorney's fees was neither equitable nor just.

*Standard of Review and Governing Law*

The Declaratory Judgment Act provides the trial court with discretion to award reasonable and necessary attorney's fees, in an amount that is just and equitable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015); ***Approach Resources I, L.P. v. Clayton***, 360 S.W.3d 632, 639 (Tex. App.–El Paso 2012, no pet.). The award is not dependent on a finding that the party prevailed in the action, and in its discretion, the trial court may decline to award fees to either party. *Id.*; *see* ***Barshop v. Medina Cty. Underground Water Conservation Dist.***, 925 S.W.2d 618, 637–38 (Tex. 1996).

A trial court's decision to grant or deny attorney's fees will not be disturbed absent an abuse of discretion. ***Bocquet v. Herring***, 972 S.W.2d 19, 21 (Tex. 1998). In conducting our review, we view the evidence in the light most favorable to the trial court's ruling, and indulge every presumption in its favor. *See* ***Aquaduct, L.L.C. v. McElhenie***, 116 S.W.3d 438, 444 (Tex. App.–Houston [14th Dist.] 2003, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, without reference to guiding rules and principles of law. ***Goode v. Shoukfeh***, 943 S.W.2d 441, 446 (Tex. 1997).

Appellate review of an attorney's fee award under the Declaratory Judgment Act requires a multifaceted analysis. *See* ***Transcontinental Ins. Co. v. Crump***, 330 S.W.3d 211, 231 (Tex. 2010). The reasonableness and necessity of the fee amount are fact questions. *See* ***Ridge Oil Co., Inc. v. Guinn Investments, Inc.***, 148 S.W.3d 143, 162–63 (Tex. 2004). Determining whether to award fees, or how much of an award is equitable and just in a given case, are questions committed to the trial court's discretion because of the nature of the issue. *Id.* at 161–62. Whether it is "equitable and just" to award attorney's fees depends not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Id.* at 162. As such, although a fact finder may determine the value of the reasonable and necessary expenditures, it remains for the court to determine how much, if any, of the reasonable and necessary fees would constitute a just and equitable award. *Id.*

This distinction was addressed by the Texas Supreme Court in ***Ridge Oil Co., Inc.*** In that case, the court was asked to determine whether a trial court's decision to award only part of the

fees which the jury had determined to be reasonable and necessary constituted an abuse of discretion. *Id.* at 161. Recognizing the distinction between the jury's fact finding duty on the reasonable and necessary prong, and the trial court's role in crafting a just and equitable award, the court explained as follows:

> There are times, such as this one, when the trial court determines that equity and justice preclude it from awarding the full amount of fees that the jury found to be reasonable and necessary. In this case, the trial judge necessarily concluded that it would not be equitable and just to award Ridge the full amount of attorney's fees, but that it would also be inequitable or unjust to award no attorney's fees even though the court had the discretion to do so. Thus, we hold that Section 31.009's 'as are equitable and just' language cannot reasonably be construed to mean anything other than the extent to which such fees are equitable and just and, thus, authorizes an award of attorney's fees less than the amount found by a jury to be reasonable and necessary.

*Id.* at 162. The court further concluded that there was "no indication in the record that the trial judge's decision was arbitrary or unreasonable," and it upheld the trial court's reduced fee award. *Id.* at 163.

Here, the reasonableness and necessity of the attorney's fees awarded to HLRA is not in dispute on appeal. As a general matter, the trial court had the discretion to reduce or refuse to award fees. *See id.* at 162. And it implicitly found that the fees were equitable and just.

### *Discussion*

Appellants argue that "hundreds of property owners approved the Amendments, but only eight [d]efendants in this case were singled out and ordered to bear the burden of paying . . . HLRA's attorney's fees," an outcome they describe as patently unfair. Appellants further note that the trial court acknowledged the defendants could not have known they were doing anything wrong, described the case as one of "first impression[,]" and invited that the case be appealed so that an appellate court could consider the issue. Thus, Appellants contend that if the trial court is not confident its decision is correct, it is not equitable and just to hold them responsible for attorney's fees.

As set forth above, Appellants filed a motion to abate, in which they argued as follows:

> While the named Defendants are the only residents of Holly Lake Ranch who filed the amended Deed Restrictions in the Wood County Deed Records, the amended Deed Restrictions impact all residents, and their property rights, of the various areas impacted by the Amended Deed Restrictions or Plaintiff's attempt to have them declared void.

> Because there are many unnamed people whose personal and real property rights are impacted by Plaintiff's actions in this suit, these people are indispensable parties to the suit and must

13

be served with notice of the suit and cited to appear. Without such notice, Plaintiff is seeking to impact the property rights of these individuals without affording them notice of this process. Therefore, the property owners in the affected areas are indispensable parties[,] and this case should be abated until such time as all affected property owners can be served with notice of the petition and cited to appear.

Appellants also filed a motion to dismiss, in which they raised similar contentions. The trial court denied these motions, and Appellants have not challenged these denials on appeal. Accordingly, the issue of whether any other residents of the various subdivisions were indispensable parties is not before us. Furthermore, if Appellants believed that other residents of the subdivisions potentially were liable for the causes of action alleged by HLRA, they could have included them in the proceedings by filing or moving for leave to file third party petitions against them. *See* TEX. R. CIV. P. 38. However, Appellants chose not to undertake this course. Moreover, Appellants have not cited to, nor is this court aware of, any authority supporting the contention that an award of attorney's fees is inequitable or unjust in matters of first impression, where the parties did not intentionally subject themselves to liability, or where the likelihood of an appeal was high.

Nonetheless, we may consider more broadly whether the trial court's award of attorney's fees is equitable and just. *See* TEX. R. APP. P. 38.1(f) (statement of an issue or point will be treated as covering every subsidiary question that is fairly included). The award of attorney's fees and costs in a declaratory judgment action is within the trial court's discretion and is not dependent upon a finding that a party substantially prevailed. ***Chase Home Fin., L.L.C. v. Cal West. Reconveyance Corp.***, 309 S.W.3d 619, 634 (Tex. App.–Houston [14th Dist.] 2010, no pet.) (citing ***Barshop v. Medina***, 925 S.W.2d 618, 637–38 (Tex. 1996)). Because our disposition of this case substantially affects the trial court's judgment, a partial remand is warranted so that the trial court can address whether the reasonable and necessary attorney's fees it awarded to HLRA still are equitable and just in accordance with the judgment rendered by this court. *See **Funes v. Villatoro***, 352 S.W.3d 200, 217 (Tex. App.–Houston [14th Dist.] 2011, pet. denied). Appellants third issue is overruled in part and sustained in part.

## CONCLUSION

Having sustained Appellants' second issue, we *reverse* the trial court's judgment to the extent that it decrees,

14

It is further ORDERED, ADJUDGED, and DECREED that votes cast by members of Holly Lake Ranch Association, Inc. on proposed amendments to the Subdivision Restrictions in the future will be allocated as follows: each member who owns a lot is entitled to one vote regardless of how many lots that member might own, and regardless of how many persons, or entities, might share the ownership rights in that member's lot.

And we *render* the following declaratory judgment in its place:

It is further ORDERED, ADJUDGED, and DECREED that votes cast by members of Holly Lake Ranch Association, Inc. on proposed amendments to the Subdivision Restrictions in the future will be allocated as follows: one vote is allotted to its owner(s) for each lot owned, regardless of the number of owners a lot may have. Thus, if a person owns multiple lots, that person is entitled to multiple votes equal to the number of lots he or she owns. In the event that a lot has multiple owners, they are allotted collectively one vote for that lot.

Having sustained Appellant's third issue in part, we *remand* the cause in part *with instructions* that the trial court address whether the reasonable and necessary attorney's fees it awarded to HLRA are equitable and just in accordance with the judgment *as rendered* by this court. Having overruled Appellants' first issue and part of its third issue, we *affirm* the remainder of the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered December 11, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 11, 2019**

**NO. 12-18-00261-CV**

**RONALD RODDY, JAY BLINT, PATSY JONES,
KENNETH MANGHAM AND SHONNA L. MULKEY,**
Appellants
V.
**HOLLY LAKE RANCH ASSOCIATION, INC.,**
Appellee

Appeal from the 402nd District Court
of Wood County, Texas (Tr.Ct.No. 2017-523)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that it decrees

It is further ORDERED, ADJUDGED, and DECREED that votes cast by members of Holly Lake Ranch Association, Inc. on proposed amendments to the Subdivision Restrictions in the future will be allocated as follows: each member who owns a lot is entitled to one vote regardless of how many lots that member might own, and regardless of how many persons, or entities, might share the ownership rights in that member's lot.

be **reversed**, and judgment **rendered** in its place:

It is further ORDERED, ADJUDGED, and DECREED that votes cast by members of Holly Lake Ranch Association, Inc. on proposed amendments to the Subdivision Restrictions in the future will be allocated as follows: one vote is allotted to its owner(s) for each lot owned, regardless of the number of owners a lot may have. Thus, if a person owns multiple lots, that person is entitled to multiple votes equal to the number of lots he or she owns. In the event that a lot has multiple owners, they are allotted collectively one vote for that lot.

It is further ORDERED, ADJUDGED, and DECREED THAT the cause be **remanded** in part *with instructions* that the trial court address whether the reasonable and necessary attorney's fees it awarded to HLRA are equitable and just in accordance with the judgment *as rendered* by this court. The remaining portion of the trial court's order is **affirmed**; all costs shall be assessed against the party incurring same, for which let execution issue; and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*